GEORGE F. SAAD, Plaintiff-Appellee, v. SOUTH SIDE BANK, Defendant.— (RESERVE INSURANCE COMPANY, Third-Party Plaintiff-Appellee, v. MUHARAB MUSTAFA et al., Third-Party Defendants-Appellants.)

First District (3rd Division) No. 77-1180

Opinion filed June 28, 1978.—Rehearing denied August 3, 1978.

Gerald A. Goldman, of Chicago, for appellants.

Daniel J. Mulcahy, of Gilmartin, Wisner & Hallenbeck, Ltd., of Chicago, for appellee Reserve Insurance Co.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, George F. Saad, was the payee of a bank money order, similar to a cashier's check, issued by the defendant, South Side Bank, an Illinois Banking Corporation (the Bank). The Bank refused to honor the money order when the plaintiff presented it for payment. Muhamud Mustafa, who had purchased the money order payable to the plaintiff but did not deliver it to him at the time it was purchased, had stopped payment alleging that the money order had been lost or mislaid. In stopping payment Mustafa purchased insurance from Reserve Insurance Company (Reserve) and executed an indemnity agreement. The indemnity agreement was also signed by Muharab Mustafa, the son of Muhamud. Since all of the transactions were carried on by Muhamud Mustafa for convenience in this opinion all references to Mustafa will mean Muhamud Mustafa. Reserve was granted leave to intervene as a defendant and also to file a third-party complaint against the Mustafas. After a trial without a jury the court entered a judgment in favor of the plaintiff and against the defendants in the amount of $12,125. On motion for summary judgment the court entered judgment in favor of the third-party plaintiff, Reserve, and against the third-party defendants, the Mustafas, in the amount of $17,303.45. The Mustafas bring this appeal.

The appeal centers on the delivery of the money order. The Mustafas contend that the money order was never delivered to the plaintiff. Under Commercial Code section 3—306 unless a person is a holder in due course he takes the instrument subject to the defense of nondelivery. (Ill. Rev. Stat. 1977, ch. 26, par. 3—306.) The plaintiff alleges in his complaint that he is a holder in due course. The Mustafas deny that allegation. Under the pleadings and Commercial Code section 3—307 it is the burden of the plaintiff to prove that fact. Under Commercial Code section 3—302 the

plaintiff as the alleged holder in due course must prove that he took the instrument for value, in good faith and without notice of any defense or claim to it on the part of any person. The implication of the Mustafas' contention is that the money order was either lost, mislaid or stolen and that either the plaintiff or his agent, Fauzi Jafar, had knowledge of this and consequently the plaintiff is not a holder in due course because he did not take the instrument in good faith or without notice of any defenses. Not being a holder in due course he takes the instrument subject to the defense of nondelivery. It is also the Mustafas' contention that that defense has been proven and that the plaintiff was not entitled to a judgment against the defendants nor in turn was Reserve entitled to judgment against the Mustafas.

The plaintiff testified that he and Jafar, his agent, had driven to Chicago and met with Mustafa. The plaintiff is a promotor of dance troupes. He and Mustafa were negotiating to bring a dance troupe to Chicago. Mustafa had previously offered a personal check but the plaintiff said he wanted a cashier's or certified check for delivery of the troupe. The following day they went to the Bank. The money order was to have been given to the plaintiff at that time. However, while at the Bank Mustafa said he wanted some sort of security for the arrival of the troupe. Jafar offered to give some films as a guarantee. These films belong to Jafar. The money order was not delivered to either the plaintiff or Jafar at that time. A written contract was entered into on an unspecified date between the plaintiff, Mustafa and Jafar. The details of the agreement are not apparent in the record.

The plaintiff further testified that Jafar subsequently received the money order from Mustafa in Detroit. Jafar flew to Montreal the day after he received the money order to deliver it to the plaintiff. The money order was for the agreement that a troupe would put on a show at McCormick Place on September 17, 1972. The plaintiff testified that the reason Jafar received the check was because he was acting as the plaintiff's agent. The plaintiff also testified that he knew that the films were delivered because it was part of the agreement and further because Mustafa delivered the check to Jafar who in turn delivered it to the plaintiff. Jafar did not testify.

Mustafa testified that after the money order was issued by the Bank he put it in his pocket and went home. A few days later he drove to Detroit with Mahmoud Yasin and at that time he had the money order with him. He went to Detroit because he wanted to buy the troupe. His son told him he did not want him to go through with it. Mustafa testified that he saw the plaintiff at Jafar's house in Detroit. When he left for Detroit he checked his wallet and he had the money order at that time. He discovered the money order was missing from his wallet two days after he returned to Chicago. Only the money order was missing from his

wallet. He testified that he did not give the money order to either Jafar or the plaintiff.

Wajih Said testified he was present at the meeting at Jafar's home in Detroit. Jafar and the plaintiff were trying to convince Mustafa to bring the troupe to Chicago and put up the money. He did not see Mustafa give the check to Jafar nor to the plaintiff. The troupe did perform in Chicago on September 17, 1972. Mustafa was not involved in placing the troupe in Chicago. On cross-examination the witness testified he never saw the money order and does not remember if Mustafa ever told him that he had one. Mustafa did tell him that he intended to finance the troupe in Chicago.

Mahmoud Yasin testified that he drove to Detroit with Mustafa. Mustafa had told the witness he was going to buy the troupe, but his family told him that they did not want him to do so. At the meeting at Jafar's house that night Mustafa told the plaintiff and Jafar that he did not want to take the troupe. Mustafa had told the witness that he had the money order with him. Yasin never saw Mustafa give Jafar the money order. Yasin and Mustafa left Jafar's house about 5 o'clock the next morning. Yasin was with Mustafa from the time he left Chicago through the time he returned to Chicago from Detroit. All of those present stayed up all night. All the parties were at Jafar's house at all times.

The Mustafas assert that delivery has not been shown because there is only testimony of the plaintiff and none from Jafar. Furthermore, the circumstantial evidence from the underlying transaction indicates the agreement to which the plaintiff had testified was never carried out and in fact Mustafa never had a part in bringing the troupe to Chicago. The Mustafas point out that they testified at trial that they did not see Mustafa give the money order to either the plaintiff or Jafar at the meeting in Detroit.

We come to a contrary conclusion. We believe there was circumstantial evidence sufficient for the trier of fact to conclude that Jafar, the plaintiff's agent, received the money order from Mustafa. Mustafa never explained how either Jafar or the plaintiff had access to the money order. He had it in his wallet at all times and only discovered it was missing after he had been home for two days after his trip to Detroit. Yasin said that Mustafa did not want to take the troupe. Mustafa never so testified. Yasin also testified that Mustafa had told the witness he was going to Detroit to buy the troupe. Mustafa said he went to Detroit because he wanted to buy the troupe. The inferences to be drawn from the fact that the contract was not carried out are difficult to ascertain because the details of the contract are not clear from the testimony.

■■■ The resolution of the factual issues in this case is dependent upon the credibility of the witnesses. The court was not compelled to accept

Mustafa's account of what happened, but was permitted to consider the surrounding circumstances and the probability or improbability of the testimony. (*People v. Heflin* (1978), 71 Ill. 2d 525, 376 N.E.2d 1367.) Unless it can be said that the court's judgment rests on doubtful, improbable or unsatisfactory evidence or is clearly insufficient a reviewing court will not substitute its judgment for that of the court below even though the evidence regarding material facts is conflicting or irreconcilable. (*People v. Powell* (1978), 72 Ill. 2d 50, 327 N.E.2d 803.) We do not believe that the judgment here can be said to rest on doubtful, improbable or unsatisfactory evidence or that the evidence is clearly insufficient.

The Mustafas also contend that the matter must be reversed because the trial court erred in denying their motion for a new trial based on newly discovered evidence. That motion states that the evidence was discovered since the trial of the cause and was not available to the Mustafas prior to trial and was not discoverable prior to trial by the exercise of due diligence. Further, the evidence is material, controlling and conclusive. In support of that motion they presented an affidavit of Mustafa which stated that he tried to speak to Jafar, a resident of Michigan, but Jafar refused to discuss the facts of the case with him. Subsequent to trial he again contacted Jafar who agreed to discuss the facts and to come to Chicago to testify in the event a new trial was granted. Jafar filed an affidavit wherein he denied he received the money order from either Mustafa or any other person and at no time did he deliver the money order to the plaintiff.

■■ The motion fails to explain why the deposition of Jafar was not taken in Michigan where he operated a business. Mustafa in his affidavit states he was in contact with Jafar at that time. The supreme court in *People ex rel. Drury v. Catholic Home Bureau* (1966), 34 Ill. 2d 84, 97, 213 N.E.2d 507, said a primary requisite for an allowance of a motion for a new trial on the grounds of newly discovered evidence "is that such evidence was not discoverable prior to trial by the exercise of ordinary diligence." The motion does not establish diligence on behalf of the Mustafas.

For these reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA and McGILLICUDDY, JJ., concur.