(No. 45229.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. PERCY NELSON, Appellant.

*Opinion filed September 17, 1974.*

WARD, J., took no part.

Thomas J. McGrath, Ltd., of Homewood, for appellant.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel, Assistant Attorney General, and Patrick T. Driscoll, Jr., and Jerome Charles Randolph, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County in February, 1964, defendant, Percy Nelson, was convicted of murder. He was sentenced to a term of 50 to 80 years in the penitentiary, and his conviction was affirmed on direct appeal. (33 Ill.2d 48.) Thereafter, defendant filed a petition seeking relief pursuant to the Post-Conviction Hearing Act (Ill. Rev. Stat. 1965, ch. 38, par. 122–1 *et seq.*), but it was dismissed without an evidentiary hearing. On appeal we noted the serious nature of defendant's contention that the trial judge made a private investigation during the trial, and we directed that an evidentiary hearing be conducted if a sufficient petition was presented. (45 Ill.2d 1, 3.) Additional affidavits were submitted and an evidentiary hearing commenced in June, 1971, before a judge other than the one who presided at

defendant's trial as directed by our order remanding the cause. Relief was denied and an appeal was permitted to be taken directly to this court. 50 Ill.2d R. 302(b).

Defendant's conviction was primarily based upon the testimony of Harold Newell, who testified the first day of trial that he and the victim stopped at the former's house where the defendant was waiting. There Newell got out of the victim's car, defendant entered it and forced the victim to drive away at gunpoint. The victim's body, containing five bullet wounds, was later discovered in the car. Newell was thoroughly cross-examined by the defense counsel and contradicted prior statements he had made to the police. At this juncture Newell left the stand, and it appeared that neither side had any further questions of the witness.

The following morning, however, Newell was recalled and contradicted his prior testimony. He testified that he, rather than the defendant, killed the victim, but that it was done at the instigation of the defendant, who had promised him $500. Defense counsel again conducted a thorough cross-examination of the witness.

The issue presented in defendant's post-conviction petition was whether the trial judge, at any time, engaged in a private investigation outside the presence of the defendant or his counsel in violation of defendant's right to due process of law. The defendant maintains that prior to Newell's second appearance two conferences were held in the judge's chambers at which neither he nor his counsel was present. Defendant specifically alleges that the first occurred between the trial judge and the assistant State's Attorney, Samuel Banks, at which time the trial judge was informed of Newell's confession. He asserts that the second conference was among the trial judge, Banks, Newell, and the public defender who represented Newell.

At the evidentiary hearing four witnesses testified as to direct knowledge of a meeting in the judge's chambers on the morning that Newell recanted his testimony. Banks, who prosecuted the case, said that he had received a letter

which had been written by Newell. The substance of the letter contradicted Newell's prior testimony. However, Banks did not remember its actual contents, but believed it may have contained a confession to the murder. He further testified that he informed the trial judge of the matter in a meeting before court convened. Defense counsel was present and Banks thought that Newell may have been in the anteroom near the judge's chambers before he was recalled to testify.

The trial judge testified that he did not think he saw the letter until after it was introduced into evidence, but that he was informed of the situation prior thereto, although he could not recall who notified him. He then summoned the public defender to consult with Newell. He further testified that he told defense counsel of the situation in the presence of the assistant State's Attorney. At this meeting the trial judge said that he indicated that defense counsel might consider proffering a motion for a mistrial, but the suggestion was rejected. He denied that Newell was ever in his chambers.

Defendant's trial counsel testified that he believed a meeting was taking place in chambers but that he was not present at the meeting. He said that he had an "impression" Newell would recant, but he did not know in what respect the testimony would be changed until Newell testified. Counsel was unable to recall exactly the events occurring at the trial due to the time which had elapsed.

An examination of the trial record discloses that defense counsel interposed a general objection prior to Newell's testimony claiming that the proceeding was "unusual." The trial judge questioned the reason for such an objection, and said "The State is going to recall this man to the stand. You have been apprised of what his testimony may be. Now, if you want to make an objection, you may specifically say why you object to this particular proceeding." Counsel did not dispute that he had been made aware of the matters of which the trial judge spoke. Thereafter, no basis for an objection was

stated. Counsel further testified that he remembered the trial judge asking if he might consider a motion for a mistrial, although he could not remember when this occurred.

Defendant testified that his counsel informed him that a meeting was held in the judge's chambers but that neither he nor his counsel was permitted to attend. Defendant admitted that prior to Newell's testimony his counsel did apprise him of the fact that Newell had confessed to the murder.

Due to various continuances Newell was not called as a witness at the evidentiary hearing until February, 1972. Before his substantive testimony at this hearing Newell expressed hostility toward both the State and the defendant. He was angered by the sentence he had received for his part in the murder, which was similar to that imposed upon the defendant. During his subsequent testimony he expressed the view that his confession had been obtained by a prosecutorial "threat," and he attempted to interject matters pertaining to his confession which had been previously resolved when this court denied his petition for post-conviction relief. *People v. Newell,* 41 Ill.2d 329.

Newell testified that on the second day of trial, the day he delivered his letter, a recess was called after he began to testify. He was taken into the judge's chambers for a meeting where he met the public defender for the first time, but he could not recall what was said. He did not think defense counsel was present. An examination of the trial transcript discloses that no recess occurred during Newell's testimony on the second day of trial. Moreover, the transcript indicates a colloquy between the public defender and the trial judge immediately before Newell testified. The public defender informed the court that he had spoken to Newell for more than an hour concerning his letter.

Newell's testimony was in conflict with the testimony of Officer Renfroe, who, along with Officer Wiley, had custody of Newell the entire morning in question. Renfroe

testified that he could not recall Newell leaving his presence or attending any meeting conducted in the judge's chambers. Additionally, he testified he had no direct knowledge of a conference held in chambers.

Wiley stated that he was uncertain as to the events of that morning. He related that after he delivered Newell's letter to Banks, he and Renfroe were then called into the anteroom near the judge's chambers. Wiley could only recall that he, Renfroe, and Banks were present at this time, although he did see defense counsel in the judge's chambers prior to Newell's testimony, but he did not know the reason for defense counsel's presence. Wiley admitted that he had previously told defendant's present counsel that there was a conference in chambers among the trial judge, Banks, Newell and himself at which defendant and his counsel were not present. However, when he testified he could only vaguely recall going into the chambers, and he did not remember who may have been present or any matter which may have been discussed.

Juanita Taylor, Newell's sister, testified that Wiley told her and Renfroe that Newell had confessed to the murder in the judge's chambers. This conversation purportedly took place before court had convened on the second day of trial. Defendant's wife, however, testified that she saw Newell, the trial judge, and Banks enter the judge's chambers about noontime during a recess after Newell began his testimony.

It has been repeatedly held that a trial judge is limited to the record made during the course of the trial. (*People v. Harris*, 57 Ill.2d 228, 231.) Any deliberations which are based upon a private investigation or upon private knowledge of the trial judge, untested by cross-examination or the rules of evidence, constitute a denial of due process of law. *People v. Harris*, 57 Ill.2d 228, 231; *People v. Wallenberg*, 24 Ill.2d 350, 354, and cases cited therein.

Defendant principally relies on *People v. Rivers*, 410

Ill. 410, in support of his position that Banks's actions in initially informing the judge of Newell's letter constituted a prohibited private investigation. *Rivers* was a bench trial of four defendants for murder. Following the presentation of testimony, the trial judge expressed the possibility that three defendants might be convicted of a lesser offense. The case was continued for over two months. Upon reconvening, the trial judge displayed a markedly changed attitude. Without ordering the case to be reopened for further evidence, he questioned the defendants' fathers in regard to whether the guns linked to the killing were registered. He spoke of the " 'cold-blooded, premeditated' " nature of the killing, and referred to the growing accounts of " 'atrocious killings by juveniles,' " and to the large number of unlicensed guns " 'exposed to potential murderers and youngsters.' " There, these remarks, both in content and attitude, indicated that there had been a private investigation by the trial judge.

Defendant further argues that *People v. Thunberg,* 412 Ill. 565, is similar to the present case. In *Thunberg,* the judge, in a bench trial of multiple defendants charged with rape, read the confession of one defendant which had not been offered in evidence, or examined by defense counsel. He also interviewed the prosecutrix and her parents outside the presence of defendant and his counsel.

*Rivers, Thunberg* and other cases relied upon by defendant, which hold that a private investigation is violative of due process, are premised upon the lack of confrontation of adverse witnesses by the defendant, or his counsel, and the resulting consideration by the trier of fact of evidence untested by cross-examination or the rules of evidence. (See generally *People v. Cooper,* 398 Ill. 468, 472-473.) The cases cited are clearly distinguishable from the present case where an assistant State's Attorney merely informed the trial judge of the receipt of Newell's letter and its contents. There is no indication in this instance that any evidence was considered which was not produced

at trial. Newell's letter was offered in evidence, and Newell was thoroughly cross-examined by defense counsel. While it may have been the better course to produce the letter initially in the presence of defendant and his counsel, we cannot say that the actions of the trial judge and the assistant State's Attorney in this regard were reversible error.

Based upon the testimony of the witnesses, the post-conviction-hearing judge found that the trial judge neither heard any evidence, conducted any private inquiries or investigations, nor considered any evidence or information outside the presence of the defendant or his counsel. This finding was based upon the evaluation of the witnesses' credibility, and the determination will be sustained unless it can fairly be said that it was manifestly erroneous. *People v. Bracey,* 51 Ill.2d 514, 517; *People v. Thomas,* 51 Ill.2d 39, 41; *People v. Rose,* 48 Ill.2d 300, 303.

Banks and the trial judge agreed that defense counsel was present at the meeting where Banks informed the parties of the new evidence justifying recall of Newell. Defense counsel's recollection that he was not in chambers during the conference must be viewed in light of the fact that he did not dispute being aware of the substance of Newell's testimony when the trial judge told counsel that he had been apprised as to the possible nature of that testimony. Additionally, the defendant admitted that his counsel informed him of Newell's confession prior to the time Newell was recalled. Newell's testimony as to his presence at a conference in chambers was not supported by the testimony of Officer Renfroe, who could not recall such a meeting. The conflicting recollections of Officer Wiley must be viewed in light of the fact that he was attempting to recall events which had occurred eight years previous to his testimony. It is also sufficient to note that inconsistencies are evident in the testimony of Newell's sister and the defendant's wife. From the evidence

presented, the determination as to the credibility of the witnesses was not improper.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

MR. JUSTICE WARD took no part in the consideration or decision of this case.