(No. 49676.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. PAUL POWELL, Appellee.

*Opinion filed March 23, 1978.—Rehearing denied July 14, 1978.*

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (Donald B. Mackay, Assistant Attorney General, and Lee T. Hettinger, James S. Veldman, and Laurence J. Bolon, Assistant State's Attorneys, of counsel), for the People.

Harry J. Busch, Patrick A. Tuite and Sidney Z. Karasik, of Chicago, for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Defendant, Paul Powell, was convicted of bribery (Ill. Rev. Stat. 1973, ch. 38, par. 33—1(a)) and solicitation (Ill.

Rev. Stat. 1973, ch. 38, par. 8—1) in a bench trial in the circuit court of Cook County. He was sentenced to two years' conditional discharge and fined $4,000 on the bribery charge, and two years' conditional discharge on the solicitation conviction. The appellate court reversed both convictions (48 Ill. App. 3d 723), and we granted leave to appeal. We reverse the appellate court.

The fact that the appellate court found "there is no evidence that Paul Powell tendered money to Jose Martinez to influence Martinez in either securing witnesses or investigating or prosecuting the criminal case entitled People v. Guevara" (48 Ill. App. 3d 723, 728) necessitates more extensive treatment than we would normally consider required by this case.

Officer Jose Martinez, an investigator for the Gang Crimes Investigation Division of the Chicago Police Department, was the sole prosecution witness. His testimony, in substance, was that he had been assigned on July 13, 1973, to investigate a case involving Awilda Torres, who had been repeatedly stabbed on July 11. On the next day he arrested Juanita Guevara, the alleged assailant. She was charged with aggravated battery, and a preliminary hearing on this complaint was set for July 26.

Officer Martinez appeared at the hearing on July 26 and asked the court for a continuance because the stabbing victim, Awilda Torres, was still in the hospital in serious condition. At this hearing attorney Paul Powell, who appeared as Juanita Guevara's defense counsel, followed the officer out of the courtroom and asked to see the arrest report in the officer's case file. The officer complied, and Powell then motioned him to the southwest corner of the hallway and told him that the parents of the Guevara girl intended to sign complaints against Awilda Torres, charging her with beating Juanita's sister prior to the stabbing. The officer replied that they had the same rights as the victim, if they had a valid complaint. Powell then

suggested to Officer Martinez that perhaps they could "get together" on the case, to which the officer replied that he did not work that way. Powell then gave him a business card, asked him to call in two weeks, and stated that he could get him a "bill" now and a "bill" in two weeks. Officer Martinez testified that he understood a "bill" to be street parlance for $100. The officer repeated that he did not work in that manner.

Later that day, Officer Martinez reported the incident to his supervising sergeant. The next day he related the conversation to the Internal Affairs Division of the Chicago Police Department and to an assistant State's Attorney.

On August 10, an assistant State's Attorney, with proper authorization, placed a recording device on a telephone in his office. Officer Martinez then used that telephone to call Powell at the latter's office. During the conversation, Powell again asked if he and Officer Martinez could get together on the case. The officer said "yes."

A court hearing in People v. Guevara was scheduled for August 20. Earlier that morning, a small, hidden tape recorder was attached to Officer Martinez. The officer controlled the device by means of a switch concealed in his right pocket. He was instructed to activate the recorder in Powell's presence, but not when there was excessive background noise or several people speaking at once. He then went into the courtroom. When Powell entered the courtroom and took a seat next to him, the officer turned on the switch and recorded their conversation. This recording was introduced into evidence at Powell's trial. During the conversation, Powell and Officer Martinez discussed how much money would be available for the latter. Finally, Powell offered Officer Martinez $250 if he could get the complaining witness to "drop the charges" against Powell's client. During a recess, Powell repeated this offer. The officer asked just how he could do this, and

Powell told him to take the complaints against the victim and use them as leverage to get the victim and her parents to drop their complaints against his client, Juanita Guevara. Powell then gave Officer Martinez a hospital bill purporting to show that the sister had been hospitalized from July 14 through July 17. Powell thereafter obtained a court continuance until October 18.

On that morning Officer Martinez went to the office of the State's Attorney accompanied by the stabbing victim, members of her family and two witnesses. There, Officer Martinez was again fitted with a hidden recording device. He then proceeded upstairs to the courtroom where People v. Guevara was to be called, leaving the victim, her family and the witnesses waiting in the State's Attorney's office. Outside the courtroom, he met Powell, who asked if the charges were to be dropped, to which Officer Martinez replied "yes," that the victim and her family had told him to "forget about it."

When the case was called, Officer Martinez, pursuant to instructions from an assistant State's Attorney, falsely testified under oath that the prosecution witnesses did not want to prosecute because the victim feared retaliatory prosecution for beating Juanita Guevara's sister. The aggravated battery charge against Juanita Guevara was then stricken on leave to reinstate, and Officer Martinez and Powell left the courtroom.

Once in the hallway outside the courtroom, Officer Martinez testified he turned off the microphone because of noise. According to the officer, Powell told him to come by his law office at 2 p.m. that day. He refused, whereupon Powell asked him to follow Powell to his automobile which was parked outside the building. At Powell's request, the officer stayed a few steps behind Powell, and for this reason, he did not turn the hidden microphone on at that time. Both entered the car, and Powell began to drive around the block. As they ap-

proached a corner, he threw two $100 bills and a $50 bill on the floor in front of Officer Martinez's shoes. The officer picked the money up and handed Powell a subpoena to appear before the Cook County grand jury concerning the bribery which had just been completed. Officer Martinez then left the car. Powell drove a short distance, got out of his car and approached Officer Martinez, who turned on the miniature recorder. The ensuing conversation led to the indictment for solicitation of the offense of obstructing justice.

The tape of this conversation and a transcript thereof were admitted into evidence. It would unduly prolong this opinion to quote all of the relevant portions of this or the August 20 taped conversations. While background noise renders parts of both unintelligible, that which is intelligible may be fairly characterized as devastating to any contention that Officer Martinez initiated the monetary discussion or that Powell's payment was for any legitimate purpose. In the October 18 conversation defendant repeatedly pleads for a "pass," states the officer is "blowing my whole license," and urges the officer to hide the money and tell the State's Attorney defendant "stiffed him" (failed to pay). The following excerpt is illustrative:

"MR. POWELL: Please go with me and tell him I stiffed you.

OFFICER MARTINEZ: I can't. I— I—

MR. POWELL: Tell him I stiffed you.

OFFICER MARTINEZ: I just can't.

* * *

MR. POWELL: Please. I'm the president of my synagogue. Oh, my God. You're gonna— Please, can we go back and see him?

OFFICER MARTINEZ: See who, Mr. Momeyer?

MR. POWELL: Yeah, the State's Attorney.

OFFICER MARTINEZ: Well—

MR. POWELL: Let me talk to him now. Let me talk to him. Tell him I stiffed you. I'll— I'll— I'll do anything you want. Anything, you name it. And tell him I stiffed

you. I promised you the bribe but I didn't give it to you. You give me back the two-and-a-half. I'll drop anything you want any place."

Defendant was the only defense witness. He testified in substance that immediately after the July 26 appearance he told Officer Martinez that his client's parents wished to sign a complaint against the victim. The officer informed Powell that the case was closed and asked for $100 to do the extra paper work involved in opening up a closed file. Officer Martinez had earlier testified that after Juanita Guevara had been arrested, the case was considered closed and that the word "closed" was stamped across his file. Powell told Officer Martinez that since he had only been paid $40, he could not possibly pay him $100.

When the parties were again in court on August 20, according to Powell, Officer Martinez indicated that he was expecting to receive some money. Powell told him that he had never offered him any payment. The officer then offered to get the victim to "drop the charges," if Powell would pay him $250. Powell thought that this was an ideal opportunity to get the officer to "take the complaints" of the Guevara family, since in the interim between appearances he had discovered that they were unable to file their complaints against Awilda Torres.

Powell testified that, during the August 20 conversation, he gave Officer Martinez a bill showing that his client's sister had been hospitalized. The officer originally doubted the authenticity of the bill, so he told him he would get him another bill. Powell testified that Officer Martinez confused Powell's reference to a "bill" with a hundred dollars, rather than a hospital bill. On cross-examination Powell was presented with the following portion of the August 20 conversation, which had been recorded by Officer Martinez's hidden microphone:

"OFFICER MARTINEZ: You told me last time a bill.

MR. POWELL: Yes, a C-note, a hundred dollars.
MARTINEZ: A hundred dollars.
MR. POWELL: A hundred dollars."

Powell explained that this was another portion of the conversation.

Powell testified that at his next appearance on behalf of Juanita Guevara on October 18, 1973, Officer Martinez approached him after the case had been stricken on leave based on the officer's false testimony. The officer demanded $250, but Powell denied making any promises and attempted to get away from him. Officer Martinez followed him to his car, located in front of the court building, and got in before Powell could lock the door. The officer's gestures indicated that he wanted money. Powell testified that he thought Officer Martinez had a gun and that he feared that the officer would shoot him there. He then threw the $250 on the floor in order to get rid of the officer, who picked it up and handed Powell a grand jury subpoena. Powell testified that he became hysterical and could not remember anything about the conversation which thereafter occurred.

At the close of this evidence, the trial judge found Powell guilty of bribery and solicitation. The appellate court reversed the bribery conviction, finding that the People did not prove bribery as it was charged in the indictment, nor were the acts sought by Powell related to the performance of the officer's official duties. That court also reversed the solicitation conviction, finding insufficient evidence that the alleged solicitation was done with the requisite intent to obstruct the apprehension or prosecution of a specific person.

We consider first defendant's contention that an appellate reversal because of insufficient evidence is tantamount to an acquittal and cannot be appealed by the People under the double jeopardy protections of the Illinois and Federal constitutions. This precise issue was

decided in *People v. Schwartz* (1974), 58 Ill. 2d 274, wherein this court said:

"The defendant in this case was not acquitted in the trial court. He was convicted, and the process of review has not been completed. (See *People v. Chupich* (1973), 53 Ill. 2d 572, 581-4.) It was the appellate court that found the evidence insufficient, and the question is as to the finality of that court's judgment.

That question is governed by section 4(c) of article VI of the Illinois Constitution, which enumerates certain instances in which an appeal from the appellate court to the supreme court is a matter of right, and then states: 'The Supreme Court may provide by rule for appeals from the Appellate Court in other cases.' Acting under that authority, on November 30, 1972, this court amended the first sentence of Rule 315(a), which deals with discretionary appeals from the appellate to the supreme court, by adding the italicized portion: 'A petition for leave to appeal to the Supreme Court from the Appellate Court may be filed *by any party, including the State,* in any case not appealable from the Appellate Court as a matter of right.' (55 Ill. 2d xii.) At the same time Rule 604(a), which deals with appeals by the State in criminal cases, was amended by adding the following sentence: 'The State may petition for leave to appeal under Rule 315(a).' 55 Ill. 2d xiii.

Insofar as the law of Illinois is concerned, therefore, we hold that the judgment of the appellate court is subject to discretionary review in this court. And insofar as the Constitution of the United States is concerned, we are not aware of any provision that would affect the right of a

State to establish a two-tier system of appellate review or to determine whether final review is to be by 3, 5, 7, or 9 judges." 58 Ill. 2d 274, 276-77. Respondent presents no persuasive reason to overrule *Schwartz,* and we adhere to it.

The bribery section of the Criminal Code of 1961 provided:

> "A person commits bribery when:
> (a) With intent to influence the performance of any act related to the employment or function of any public officer, public employee or juror, he promises or tenders to that person any property or personal advantage which he is not authorized by law to accept ***." (Ill. Rev. Stat. 1973, ch. 38, par. 33—1.)

The bribery indictment alleged in part:

> "with the intent to influence the performance of acts related to the employment and function of a public employee, Jose Martinez, he [Powell] promised and tendered to that person property which Jose Martinez is not authorized by law to accept, to wit: Paul Powell did promise and tender a quantity of United States currency to Chicago Police Officer Jose Martinez, to influence Martinez in the securing of witnesses, and investigation and prosecution of a criminal case entitled *People v. Juanita Guevara* in the Circuit Court of Cook County."

The appellate court found that Powell never actually told Officer Martinez not to bring a witness to court, and that, even if he did, the bringing of witnesses to the courtroom was not related to the official duties of the officer. Officer Martinez testified, however, that his function and role as a police officer was to "investigate crime, secure witnesses, bring enough evidence to court," and that inquiries as to the availability of witnesses were part of his "official duties." But such testimony is not essential. It is common knowledge of which we take judicial notice that a principal duty of a policeman or any other law enforcement officer is the enforcement of the law. That payments made to an investigating officer in a criminal case to induce him to

persuade key prosecuting witnesses not to appear or to withdraw a complaint are not intended to influence the performance of the officer's duties in investigating, identifying and securing witnesses in criminal cases is an argument we believe does not merit further discussion. Nor, in our judgment, can it be said that a police officer's official duties in a case have been terminated simply because of a departmental administrative practice to designate a case as "closed" or "completed" once a suspect has been arrested and a complaint filed. It seems to us clear that an important part of any investigating officer's official duties is the location and procuring of witnesses for the prosecution or for the defendant so that the result of a crime will be a fair trial and punishment for the proper person.

*People v. Clemons* (1962), 26 Ill. 2d 481, is relevant here. There two Cook County deputy sheriffs were convicted for receiving money in return for not arresting four youths. On appeal, the officers contended that the State failed to prove that they had an absolute duty to make an arrest and that therefore it was not within their official duties. Thus, they contended, no bribery could have occurred since money was paid for something which was not necessarily an official duty in that particular instance. The court rejected this technical argument, stating:

> "The essence of the crime of bribery is the giving to, and receiving or acceptance by, a public officer of something of value to influence him in the performance of his official duty, whether it be termed general or specific." 26 Ill. 2d 481, 483.

The appellate court erred in reversing the bribery conviction.

That court erred, too, in reversing the conviction for solicitation. Defendant contends and the appellate court

agreed that the solicitation indictment was invalid because it did not allege which person's apprehension Paul Powell was seeking to prevent, thus failing to inform the accused of the nature of his offense and preventing him from adequately preparing his defense. The appellate court also found insufficient proof of this element. We regard both contentions as without merit.

The obstructing justice section of the Criminal Code provides:

> "A person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, he knowingly commits any of the following acts:
>
> (a) Destroys, alters, conceals or disguises physical evidence, plants false evidence, furnishes false information ***." Ill. Rev. Stat. 1973, ch. 38, par. 31—4(a).

Also, under the Criminal Code:

> "A person commits solicitation when, with intent that an offense be committed, he commands, encourages or requests another to commit that offense." Ill. Rev. Stat. 1973, ch. 38, par. 8—1(a).

The crime of solicitation is committed when a person, with intent that an offense be committed, commands, encourages or requests another to commit that offense. (Ill. Rev. Stat. 1973, ch. 38, par. 8—1(a).) Obstructing justice occurs when one, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, knowingly commits one of certain enumerated acts, including concealing physical evidence or furnishing false information. (Ill. Rev. Stat. 1973, ch. 38, par. 31—4(a).) The testimony of Officer Martinez, coupled with the earlier noted transcript of the conversation which occurred after Officer Martinez gave Powell the grand jury subpoena, clearly establishes that Powell solicited the obstruction of justice. Telling the assistant State's Attorney that Powell "stiffed" Officer Martinez, or did not pay him the bribe money, obviously involves concealing the

$250. In addition, Powell directly encouraged the officer to hide the currency, which was later introduced against Powell as People's exhibit No. 7. As to the sufficiency of the indictment, we note that it alleged:

> "Paul Powell committed the offense of solicitation in that with intent that the offense of obstructing justice be committed encouraged and requested Chicago Police Officer Jose Martinez to commit that offense, to wit: knowingly encouraged and requested Jose Martinez to conceal $250.00 in United States currency, said currency being physical evidence that the offense of bribery was committed by Paul Powell on or about October 18, 1973.
>     In violation of Chapter 38, Section 8—1, Illinois Revised Statutes, 1973."

In our judgment this indictment did in fact allege the name of the particular person—namely, Paul Powell—whose apprehension Officer Martinez would intend to prevent if he had concealed the evidence as defendant had requested. An indictment which charges an offense in the language of the statute is sufficient when the statute itself apprises the defendant with reasonable certainty of the precise offense with which he or she is charged. (*People v. Grant* (1974), 57 Ill. 2d 264, 267; *People v. Harvey* (1973), 53 Ill. 2d 585, 588; *People v. Patrick* (1967), 38 Ill. 2d 255, 258.) Whether a charge is sufficient "is to be determined by the substance of the charge and not the technicalities of its language." (*People v. Mahle* (1974), 57 Ill. 2d 279, 283.) This indictment is first couched in the language of the solicitation statute, then goes on to specify the key elements of the crime solicited; a common sense reading of it makes difficult a belief that Powell could not properly prepare his defense because the indictment was not sufficiently specific. In any event, "[t]he office of a bill of particulars is to provide more specificity of detail to supplement a sufficient indictment so as to enable an accused better to understand the nature of the charge against him or better to prepare his defense." (*People v. Patrick* (1967), 38 Ill. 2d 255, 260.) No bill of particulars

was requested.

The defendant attacks the credibility of Officer Martinez and the probative value of the State's evidence on the grounds that there are variances in the officer's testimony, that the tape recorder was under his control, and that he is an admitted perjurer in that he falsely stated to the court under oath that the Guevara family did not want to prosecute the charges against defendant's client. While we do not want to be understood as encouraging or condoning the false testimony, the fact remains that the discrepancies in the officer's testimony are not significant, and neither his control of the recording switch nor the alleged perjury diminishes or explains away the incriminating character of defendant's recorded conversation.

> "[W]here a case is tried by the court without a jury, the determination of the credibility of the witnesses and the weight to be accorded their testimony is committed to the trial judge; and, unless it can be said that the court's judgment is found to rest on doubtful, improbable or unsatisfactory evidence, or clearly insufficient evidence, a reviewing court will not substitute its judgment for that of the court below even though evidence regarding material facts is conflicting and irreconcilable. (*People v. West,* 15 Ill. 2d 171.)" *People v. Clemons* (1962), 26 Ill. 481, 484.

This rule is well settled in Illinois. (See *People v. Jones* (1975), 60 Ill. 2d 300, 307; *People v. Fleming* (1971), 50 Ill. 2d 141, 145.) The trial judge, who was aware of the alleged perjury, saw and heard the witnesses. He found the evidence sufficient, and we find nothing in this record justifying a contrary conclusion.

The judgment of the appellate court is reversed, and the judgment of the circuit court of Cook County is affirmed.

*Appellate court reversed; circuit court affirmed.*