THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY L. LUIGS, Defendant-Appellant.

Fifth District    No. 79-626

Opinion filed May 26, 1981.

Thomas Mansfield, of Pinckneyville, for appellant.

Patrick Hitpas, State's Attorney, of Carlyle (Martin N. Ashley, Nicholas B. Svalina, and Gillum Ferguson, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE HARRISON delivered the opinion of the court:

Appellant Larry L. Luigs appeals from a decision rendered in the Fourth Judicial Circuit of Clinton County, Illinois on October 5, 1979. He was convicted and sentenced to 15 years imprisonment for the crime of rape, to be served concurrently with a 10-year term for indecent liberties with a child. (Ill. Rev. Stat. 1979, ch. 38, pars. 11—1 and 11—4(a)(3).) The State proceeded against 40-year-old Luigs on the accountability theory. (Ill. Rev. Stat. 1979, ch. 38, par. 5—1.) His co-assailant Gary Polley was tried separately. (Cause No. 79-486.) Luigs cites several errors on appeal. We affirm the trial court's decision.

The record establishes that on May 10, 1979, the 12-year-old victim saw the defendants Larry Luigs and Gary Polley in the street outside her home. Recognizing them as fellow residents of the Deerwood Trailer Park in Centralia, she engaged in conversation with them. At Polley's request, she accompanied them into a wooded area near the trailer park. When the men's intentions became clear, the girl stated her desire to return home. Instead, the defendants forced the girl to the ground, where Luigs cut off her clothing. He held the knife to her throat and masturbated, while Polley kissed and fondled her breasts. Polley then had sexual intercourse with her. The victim testified that she screamed several times during the course of the attack. This was corroborated by members of the Harting family who lived nearby and with whom she sought refuge.

■■ Appellant assigns several points of error for our review. First, we will address his venue challenge. As the court stated in *People v. Massarella* (1980), 80 Ill. App. 3d 552, 561, 400 N.E.2d 436:

> "Venue, like other facts necessary to prove the commission of an offense, may be established by circumstantial evidence."

Testimony in the record locating the scene of the crime by street address or by reference to other outstanding landmarks is sufficient circumstantial evidence to establish venue. (*People v. Pride* (1959), 16 Ill. 2d 82, 87-89, 156 N.E.2d 551.) In the past, this court has taken judicial notice of the location of county boundary lines in order to determine that venue was established. (*People v. Stoafer* (1959), 112 Ill. App. 2d 198, 302-04, 251 N.E.2d 108.) Having reviewed the record and found sufficient evidence, we hereby take judicial notice of the fact that Harting Drive lies in the city of Centralia, that Harting Drive is located a short distance from Deer-

wood Trailer Park, and that the entire area in question is situated within the county of Clinton in Illinois.

Next, appellant charges that the trial court erred in denying his motion to dismiss the count of rape. He maintains that the doctrine of nonmutual collateral estoppel prevents his being convicted under an accountability theory for the offense of rape when, in a separate trial, his co-defendant was convicted of attempt to commit rape. We can dispense with appellant's charge by consulting the statute which expressly authorizes such a conviction. Section 5—3 of the Illinois Criminal Code (Ill. Rev. Stat. 1979, ch. 38, par. 5—3) provides:

"A person who is legally accountable for the conduct of another which is an element of an offense may be convicted upon proof that the offense was committed and that he was so accountable, although the other person claimed to have committed the offense has not been prosecuted or convicted, or has been convicted of a different offense or degree of offense, or is not amenable to justice, or has been acquitted."

The Illinois courts have consistently applied section 5—3. See *People v. Ruiz*, where the court held that the defendant's conviction for murder could stand even though his co-defendant had pleaded guilty to involuntary manslaughter in a prior proceeding. *People v. Ruiz* (1979), 78 Ill. App. 3d 326, 396 N.E.2d 1314; see *People v. Kijowski* (1978), 61 Ill. App. 3d 809, 377 N.E.2d 1324.

Appellant challenges the application of section 5—3 on constitutional grounds. These same constitutional concerns are addressed in the recent Supreme Court case, *United States v. Standefer* (1980), 447 U.S. 10, 64 L. Ed. 2d 689, 100 S. Ct. 1999. In *Standefer* the court construed 18 U.S.C. §2 (1976), the Federal statute similar to section 5—3, which authorizes prosecution of an aider or abettor after the principal has been acquitted. Pointing out that at least 34 States have statutes effectively identical to 18 U.S.C. §2, the court adhered to the rationale behind those statutes. It agreed that all participants in a crime are "principals", that they must be tried and sentenced accordingly, and that "the fate of the other participants is irrelevant." (*Standefer*, 447 U.S. 10, 20, 64 L. Ed. 2d 689, 698, 100 S. Ct. 1999, 2006.) The court effectively rejected the application of the nonmutual collateral estoppel theory. It explained that, although the double jeopardy clause of the fifth amendment was designed to prevent citizens from being tried twice for the same crime, the clause could not insure constitutional protection for a defendant who had never actually been put in jeopardy.

The Indiana Court of Appeals, Third District, disposed of this issue in similar fashion. (*Williams v. State* (Ind. App. 1980), 406 N.E.2d 263.) The

defendant Williams drove the car from which his co-assailant allegedly fired several fatal shots. He challenged his conviction for reckless homicide on the grounds that his co-assailant was acquitted of murder charges in a previous trial. Williams argued that, since his participation amounted to that of an accessory, "even-handed justice" precluded his prosecution and conviction of the crime for which his principal had been exonerated. (*Williams*, 406 N.E.2d 263, 264.) The Indiana court, relying on *Standefer* and on Indiana's equivalent of section 5—3, held that Williams' conviction was not barred by the acquittal of his codefendant. The doctrines of collateral estoppel and double jeopardy are safeguards which only apply where the same defendant might be tried twice for the same crime. The court reminded Williams that he had been tried only once. Applying this same logic, we hold therefore that the trial court did not err in denying appellant's motion to dismiss the count of rape.

Further, as emphasized in *Standefer*, criminal cases present different policy considerations than civil cases. The Supreme Court quoted from the court of appeals opinion which it was affirming:

> "The public interest in the accuracy and justice of criminal results is greater than the concern for judicial economy professed in civil cases and we are thus inclined to reject, at least as a general matter, a rule that would spread the effect of an erroneous acquittal to all those who participated in a particular criminal transaction." 447 U.S. 10, 25, 64 L. Ed. 2d 689, 701, 100 S. Ct. 1999, 2008.

These public policy concerns provide even greater justification for our denying appellant's second assignment of error.

■■ Next appellant contends that the State failed to prove beyond a reasonable doubt that sexual intercourse occurred. Sexual intercourse is defined as "any penetration of the female sex organ by the male sex organ." (Ill. Rev. Stat. 1979, ch. 38, par. 11—1(b).) Appellant claims that the evidence does not support a finding that such penetration took place. The State maintains that this determination, a question of fact for the jury, was adequately supported by the evidence offered at trial and should not be disturbed on review. We agree.

The victim testified that penetration occurred. Appellant challenges this testimony, first on the grounds that a 12-year-old is too young and sexually inexperienced to recount the events accurately. During trial, defense counsel cross-examined the youngster concerning the issue of penetration. He made several unsuccessful attempts to elicit equivocal responses. Her testimony, however, did not waver. The general rule is that the testimony of the victim alone is sufficient to support the conviction for rape, if the testimony is clear and convincing. (*People v. Graham* (1978), 60 Ill. App. 3d 1034, 1045, 377 N.E.2d 179.) Courts accept

statements regarding penetration which are submitted by victims as young and as inexperienced as this victim, if other evidence corroborates those statements. (*Graham*, 60 Ill. App. 3d 1034, 1045; *People v. Riley* (1967), 84 Ill. App. 2d 296, 300, 228 N.E.2d 190.) In this case, the fact that the victim made a prompt complaint to the authorities is sufficient corroboration. (*Graham*, 60 Ill. App. 3d 1034, 1045.) Viewing the record as a whole, we find that her testimony is clear, convincing and supported by other facts.

Appellant's effort to discredit the youngster's testimony on the basis of certain inconsistent statements is also unsuccessful. While answering questions by an attending nurse in the emergency room, the victim apparently responded affirmatively when asked whether Luigs and his companion had "reversed roles" during the assault. Since she later formally charged that Polley had engaged in sexual intercourse with her and that Luigs had only aided him, Luigs insists that the victim's entire testimony must be discounted. However, after reviewing the record carefully, we conclude that the jury could have felt that the child failed to understand the nurse's question. We will not disregard the victim's in-court testimony simply because she gave a prior inconsistent response to a question which was posed in ambiguous terms. This minor variance in the record does not detract from the reasonableness of her story. *People v. Payton* (1980), 84 Ill. App. 3d 181, 183, 405 N.E.2d 18.

Finally, appellant maintains that the testimony of Dr. Robert D. Pernot, examining physician in the emergency room, does not support the jury's finding that penetration occurred. Dr. Pernot stated that he found no physical evidence of entry. He testified to the absence of cuts or bruises in the genital area, and indicated that not only was the vaginal specimen negative but the hymen remained intact.

Appellee correctly points out that the absence of blood, spermatozoa, or other physical matter upon the person of the victim does not discredit the victim's testimony as a matter of law. (*Graham*, 60 Ill. App. 3d 1034, 1044.) If there exists proof of penetration, the question is for the jury to decide. *In re Williams* (1974), 24 Ill. App. 3d 593, 598, 321 N.E.2d 281.

The transcript of the trial reveals that Dr. Pernot mentioned a wet substance present in the victim's pubic hair. He testified several times that sexual intercourse can take place even though the hymen has not been ruptured. Though somewhat inconclusive, the doctor's expert testimony could have formed the basis for the jury's decision that penetration occurred. The jury must weigh this evidence in determining the defendant's guilt or innocence. Because this weighing of evidence is a function of the jury, a reviewing court will not set aside a finding of guilt unless the evidence is so "palpably contrary to the finding or so unreasonable, im-

probable, or unsatisfactory as to cause reasonable doubt as to the guilt of the accused." (*People v. Reese* (1973), 54 Ill. 2d 51, 58, 294 N.E.2d 288.) Since we find there was sufficient evidence to support the jury's verdict that penetration did occur, we affirm on this issue.

■■ For his fourth assignment of error, appellant charges that he was denied a fair trial because the trial court excluded all evidence concerning a second knife. The record shows that on the morning after the assault, two women who lived in Deerwood Park found a knife near the scene of the crime. They summoned a deputy sheriff who took photographs and then confiscated the knife as evidence. Luigs sought to introduce the knife into evidence to show that his companion possessed his own knife and was thus the sole perpetrator of the crime in question. The court, on relevancy grounds, refused to admit the knife and the photographs, and struck all testimony concerning it.

The trial court correctly excluded the proffered exhibit and related testimony. A defendant has the right to prove any fact or circumstances tending to show that someone else committed the crime. (*People v. Velillari* (1980), 84 Ill. App. 3d 333, 341, 405 N.E.2d 466.) This right is limited by the further rule that the evidence offered may not be speculative, irrelevant, or immaterial. (*People v. Mikel* (1979), 73 Ill. App. 3d 21, 30, 391 N.E.2d 550.) The record reveals a complete lack of testimony connecting the second knife to the crime. The victim testified that a small knife had been held to her throat. She identified the first knife, found in the possession of Luigs, as that knife. On the day of the assault, police officers combed the area thoroughly in search of other evidentiary items and found none. According to the investigating officer, Deputy Michael Burton, the circumstances which surrounded the appearance of the second knife (24 hours later in the very location the officers had previously searched), were somewhat suspect. We feel the appellant has asked the court to speculate on a theory of defense too doubtful and too remote to be acceptable. The trial court, therefore, did not abuse its discretion in denying admission of such evidence on relevance grounds.

■■ As for appellant's objection to the victim's testimony because she was incompetent to testify, the law is clear in Illinois. A child who is mature enough to "receive correct impressions by his senses and to recollect and narrate intelligently, and to appreciate the moral duty to tell the truth" is considered competent to testify. (*People v. Ballinger* (1967), 36 Ill. 2d 620, 622, 225 N.E.2d 10, *cert. denied* (1967), 388 U.S. 920, 18 L. Ed. 2d 1366, 87 S. Ct. 2141.) The trial judge determines a witness' competency, either by making a preliminary inquiry or by observing her demeanor and ability to testify during trial. (*People v. Edwards* (1973), 55 Ill. 2d 25, 32-33, 302 N.E.2d 306.) The court has permitted a 10-year-old's testimony (*People v. Pearson* (1970), 126 Ill. App. 2d 166, 261 N.E.2d 519), and even an eight-

year-old's testimony (*Dallas v. Granite City Steel Co.* (1965), 64 Ill. App. 2d 409, 211 N.E.2d 907), once it was satisfied that the witnesses understood their duty to report accurately. A determination that a witness is competent will not be overturned unless it appears that there was a manifest abuse of discretion. (*Pearson*, 126 Ill. App. 2d 166, 170.) In the present case the witness' ability to comprehend the moral and legal significance of the proceedings, as well as her ability to convey her sense of impressions, was firmly established in the record. The trial court did not err in permitting her to testify.

■■ We also reject appellant's argument that the court must reverse and remand because it allowed the youngster to respond to leading questions put forth by her attorneys. Appellant challenges this particular excerpt.

"Q. Now, as Garry Polley was on top of you, did he do anything with his penis?

A. Yes.

Q. What did he do?

A. He entered me.

Q. When you say he entered you, do you mean his penis entered?

[Defense counsel's objection.]

A. Yes."

We feel the victim intended to testify that penetration occurred. Counsel's rephrasing was a harmless attempt to clarify the youngster's testimony, not an effort to suggest to her the appropriate responses. A reviewing court will not reverse a conviction in which the trial court permitted the use of leading questions unless it appears both that the court abused its discretion and that such abuse resulted in substantial injury to the defendant. (*People v. Taylor* (1971), 132 Ill. App. 2d 473, 484, 270 N.E.2d 628.) It is clear that no such abuse or injury resulted. Therefore, appellant's objection to the form of the question was properly overruled.

Finally, appellant contends that his conviction for indecent liberties must be vacated because it was based on the same acts relied upon to sustain his conviction for rape. He argues that since the act of kissing and fondling the victim was "part and parcel" of the act of rape, occurring at the same location, to the same person, and in the same time frame, it does not warrant multiple conviction or sentencing.

■■ The definitive statement by the Illinois Supreme Court on multiple sentencing appears in *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273:

"[W]hen more than one offense arises from a series of incidental or closely related acts, and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered."

Thus, so long as the offenses charged have not been carved from a single transaction, and so long as one of the offenses is not a lesser-included offense of the other, multiple conviction and sentencing is proper.

"Act" is defined in *King* as an "overt or outward manifestation which will support a different offense." (*King*, 66 Ill. 2d 551, 566.) Gary Polley's act constituting indecent liberties with a child and his act of rape do support different offenses. The record discloses that at one point in the assault, Gary Polley kissed and fondled the victim's face and breasts. At a later point in time, he entered her. The act of kissing and fondling is not the same as the act of sexual intercourse. Rather, they are two separate and distinct physical acts which would independently support different offenses.

Likewise, indecent liberties with a child based on lewd fondling is not by definition a lesser included offense of rape. To be classified as such, every element of the lesser must be included within the greater. (*People v. Smith* (1980), 78 Ill. 2d 298, 306, 399 N.E.2d 1289.) We articulated this rule in *People v. Rudd* (1980), 90 Ill. App. 3d 22, 25-26, 412 N.E.2d 982:

> "For an offense to be a lesser included offense, it must not have any element not included in the greater offense so that it is impossible to commit the greater offense without necessarily committing the lesser. *People v. Foust* (1980), 82 Ill. App. 3d 516, 401 N.E.2d 1329."

■■ In the present case, appellant was sentenced to 15 years concurrently for convictions of indecent liberties and for rape. The elements of rape are sexual intercourse between a male 14 years or older and a female, by force and against her will. (Ill. Rev. Stat. 1979, ch. 38, par. 11—1.) Indecent liberties based on lewd fondling or touching requires proof that a defendant is at least 17 years old, and that he committed the act with the intent to arouse himself or the victim, a child under 16. (Ill. Rev. Stat. 1979, ch. 38, par. 11—4(a)(3).) While rape is a general intent crime, indecent liberties based on lewd fondling is a specific intent crime. While force must be shown for a rape conviction, no such showing is required for an indecent liberties conviction. Applying *Smith* and *Rudd*, therefore, we find that indecent liberties based on lewd fondling is not a lesser included offense of rape.

The cases cited by appellant as support for his position that the indecent liberties conviction should be vacated are easily distinguishable. In each, the court made an explicit finding that a single act gave rise to the multiple convictions and sentences. (*People v. Rapoff* (1980), 84 Ill. App. 3d 206, 209, 405 N.E.2d 377; *People v. Ford* (1980), 83 Ill. App. 3d 57, 75, 403 N.E.2d 512; *People v. Schultz* (1979), 73 Ill. App. 3d 379, 382, 392

N.E.2d 322.) That finding therefore warranted a dismissal of the conviction for the lesser offense. We make no such finding in the instant case.

The recently filed opinion of *People v. Boyd* (1980), 87 Ill. App. 3d 978, 409 N.E.2d 392, merits our attention. Though it is similar to the case at bar, there is a crucial distinction. In *Boyd*, the court vacated a conviction of indecent liberties based on lewd fondling (Ill. Rev. Stat. 1979, ch. 38, par. 11—4(a)(3)) because it stemmed from the same act which gave rise to the defendant's conviction for indecent liberties based on deviate sexual conduct (Ill. Rev. Stat. 1979, ch. 38, par. 11—4(a)(2)). Noting that each violation was one of three acts proscribed by a statute, and that each violation was located within the same subsection of that statute, the court refused to regard them as separate crimes. *Boyd* therefore added one more factor, placement within the statutory scheme, for the court to consider in determining whether an act is a separate offense or whether it is part of a single transaction.

Here, of course, the crimes of rape and indecent liberties based on lewd fondling are located in different sections of the statute. The drafters of the criminal code drew precise and definite distinctions between them. Thus, when the acts are separate and distinct and not lesser-included offenses of the other, they warrant multiple conviction and sentencing. Accordingly, we affirm the trial court on this last issue as well.

Affirmed.

KASSERMAN, P. J., and JONES, J., concur.