THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GLORIA WILLIAMS, Defendant-Appellant.

First District (1st Division)    No. 80-2979

Opinion filed March 29, 1982.

McGLOON, J., specially concurring.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Edward Cozzi, and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GOLDBERG delivered the opinion of the court:

After a bench trial, Gloria Williams (defendant), was found guilty of child abduction (Ill. Rev. Stat. 1979, ch. 38, par. 10—5(b)(2)) and sentenced to probation for one year. She appeals.

I

Defendant contends the proof was inadequate under the reasonable doubt standard and also failed to establish she had knowledge of the court order which she allegedly violated. Clinton Williams, the child in question, testified he was 12 years old. In January of 1980 he saw his mother at his school in Markham. He went home to Harvey with her on the bus. He did not sleep in his mother's home, but she brought him over to sleep at the home of a neighbor.

Estella Fleming testified she was duly designated as a foster parent. Clinton Williams lived with her from about February 28, 1979, until January of 1980. The boy attended school in Markham. He did not return from school on January 11, 1980. She did not give the boy permission to leave. After he left for school on January 11, 1980, she did not see him for a month.

A social worker identified a copy of an order entered by the juvenile branch of the circuit court on February 23, 1979, taking the custody of Clinton Williams from his mother. On January 11, 1980, Fleming told the witness the boy was missing and had been "kidnapped."

The social worker also testified that on January 14, 1980, he went to the area of 70th and Clyde. He saw the defendant leave the premises at 7043-7045 Clyde and return to her own address which was 7031 Clyde. Defendant was then alone. He and his department did not at any time ever give anyone, other than Estella Fleming, custody and control of the boy.

Defendant testified in her own behalf. She stated the police searched her premises on January 11, 1980, but no one was found. She testified she last saw her son on January 7, 1980, or January 8, 1980. On January 14, 1980, she was arrested. She had never heard about the order for change of her son's custody and never received a copy thereof. She was in juvenile court on the day in question but the judge did not say anything about the custody of the child.

Laura Bowers, a schoolmate of the boy, testified in rebuttal. On January 11, 1980, she attended school with Clinton Williams. At about 3 o'clock when school was over, she walked out of the building with Clinton some 3 feet in front of her. She saw a lady, whom she identified as the defendant, on the other side of the street. That day the police showed her a picture which was that of the same lady. She told the police that was

the person who took Clinton. She recognized this lady as the one who called Clinton over to her.

■■ In our opinion, despite the denial by defendant, the evidence proves beyond reasonable doubt and to a moral certainty that defendant not only was aware of the order for custody but deliberately sought to evade it by taking Clinton from the school and keeping him in her custody for a number of days. She concealed Clinton by taking him over to the neighbor's house at night. The denial by defendant simply raises an issue of credibility. In our opinion, the trial judge correctly resolved the issue of credibility. His determination may not be reversed by this court. We may not substitute our judgment for that of the trial judge. *People v. Powell* (1978), 72 Ill. 2d 50, 65, 377 N.E.2d 803, *cert. denied* (1979), 440 U.S. 907, 59 L. Ed. 2d 455, 99 S. Ct. 1214.

## II

Defendant urges her son Clinton, 12 years old, and Laura Bowers, 11 years old, were not competent witnesses. As regards Clinton, the trial court conducted a thorough hearing regarding his competency to testify. Both counsel supplemented the questions put by the trial court. As regards Laura Bowers, the trial judge conducted a thorough examination of the witness. Both counsel indicated they had no additional questions. The trial court found each of these witnesses competent.

As a general matter, "the degree of a child's intelligence, and not his age, determines his competency * * *." (*People v. Edwards* (1973), 55 Ill. 2d 25, 33, 302 N.E.2d 306, *cert. denied* (1974), 415 U.S. 928, 39 L. Ed. 2d 486, 94 S. Ct. 1438.) This proposition has been correctly described as "axiomatic in Illinois." (*People v. Nash* (1980), 90 Ill. App. 3d 612, 617, 413 N.E.2d 16, and cases there cited.) In *In re Cruz* (1979), 76 Ill. App. 3d 565, 568, 395 N.E.2d 388, this court, following *People v. Ballinger* (1967), 36 Ill. 2d 620, 622, 225 N.E.2d 10, *cert. denied* (1967), 388 U.S. 920, 18 L. Ed. 2d 1366, 87 S. Ct. 2141, held:

> "In determining the minor's intelligence, the judge should consider whether the minor is sufficiently mature to: (1) receive correct impressions from his senses; (2) recollect these impressions; (3) understand questions and narrate answers intelligently; and (4) appreciate the moral duty to tell the truth."

Thus, the age of the young witness is not the governing point. The courts have held witnesses of 10 or even 8 years of age competent to testify. (See *People v. Luigs* (1981), 96 Ill. App. 3d 700, 706-07, 421 N.E.2d 961.) In addition, it is universally adjudged that the determination of competency by the trial judge "will not be overturned unless it appears that there was a manifest abuse of discretion." *People v. Luigs* (1981), 96 Ill. App. 3d 700, 707. See also *In re Cruz* (1979), 76 Ill. App. 3d 565, 568.

■■ We find no abuse of discretion as regards the competency of either of these witnesses. On the contrary, the able and thorough trial judge acted with complete legal propriety in his ruling on the competency of both witnesses. We need note only defendant's argument that Clinton was not competent because he stated he had 17 sisters. The record shows that the witness last saw his sisters when he was about 3 years old. As the State correctly points out, this argument raises simply the point regarding the ability of a 3-year-old to recollect. We find no error in this regard.

Defendant adds criticism of the trial court in allegedly basing his finding of guilty on matters outside the record. On the issue of whether defendant had actual knowledge of the order of the juvenile court, the trial court observed that he had sat in the juvenile court, was familiar to an extent with the proceedings there and therefore was "mindful of the notice that must be given to parents before such orders are entered."

■■ We regard this argument as being without substance. Defendant cites and relies upon inapplicable cases such as *People v. Nelson* (1974), 58 Ill. 2d 61, 317 N.E.2d 31, in which the trial judge held fact-finding conferences in his chambers outside of the presence of defendant or his counsel. In the case before us the trial court made a simple statement regarding general practice with which every judge and member of the bar is familiar regarding the need for notice before an order is entered taking a child from the custody of the natural mother. In addition, as above shown, the record is strong beyond reasonable doubt in demonstrating that the defendant had full knowledge of the order removing her child from her custody. We find no merit in defendant's contention.

### III

As regards defendant's claim for violation of her statutory right to speedy trial (Ill. Rev. Stat. 1979, ch. 38, par. 103—5(a)), the pertinent statute provides:

"Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant, by an examination for competency ordered pursuant to Section 104—2 of this Act, by a competency hearing, by an adjudication of incompetency for trial, by a continuance allowed pursuant to Section 114—4 of this Act after a court's determination of the defendant's physical incapacity for trial, or by an interlocutory appeal."

The cases follow the direct language of the statute. (See *People v. Siglar* (1971), 49 Ill. 2d 491, 496, 274 N.E.2d 65.) These are the pertinent calculations:

January 14, 1980—Defendant arrested.

January 21, 1980 to February 11, 1980—By agreement of the parties hearing continued for psychiatric evaluation.

February 25, 1980—Information filed. Order of court continued to March 5, 1980, for fitness hearing and then continued to March 6, 1980, by agreement of the parties.

March 6, 1980—Fitness examination of defendant ordered. On motion of defendant, case continued to March 21, 1980.

March 21, 1980—Pursuant to petition alleging defendant was unfit, order of court finding defendant unfit but also there was "a substantial probability that the defendant, if provided with a course of treatment, will attain fitness in one year."

July 15, 1980—Petition of defendant for discharge on the ground that after examination a physcian has found her competent.

July 15, 1980—Defendant adjudged competent and ordered released from jurisdiction of the Department of Mental Health. Trial commenced.

■■ The above shows a delay of seven days from January 14, 1980, to January 21, 1980. However, subsequent delays allowed on January 21, 1980, February 25, 1980, and March 6, 1980, were all obtained by motion of defendant or by agreement of the parties. The statutory period was therefore tolled on all of these dates and until March 21, 1980. (*People v. Boyd* (1980), 88 Ill. App. 3d 825, 839, 410 N.E.2d 931, *cert. pending.*) The remaining delay on March 21, 1980, was caused by the adjudication of incompetency of the defendant. In accordance with the language of the statute above quoted, when it appeared that defendant was restored to competency her trial was started immediately and without delay. We find no violation of defendant's rights in this regard. The judgment is accordingly affirmed.

Judgment affirmed.

CAMPBELL, P. J., concurs.

JUSTICE McGLOON, specially concurring:

I concur with the result reached by my colleagues, but believe that defendant's argument based on section 104—23 of the Code of Criminal Procedure of 1963 should be addressed because of the uncertainty expressed by the trial court regarding the application of this and related statutes involving unfit defendants.

Defendant has argued that her right to a speedy trial was violated where the trial court failed to conduct a discharge hearing within 120 days of her arrest. She further maintained that a discharge hearing was required by section 104—23(a). (Ill. Rev. Stat., 1979 Supp., ch. 38, par. 104—23(a).) The trial court ruled that defendant was not entitled to a

discharge hearing as there was a substantial probability that she would attain fitness within one year. The court based its ruling on its belief that section 104—16(d) (Ill. Rev. Stat., 1979 Supp., ch. 38, par. 104—16(d)) allowed discharge hearings only for those not likely to become fit within one year after a finding of unfitness.

Section 104—23 provides in part:

"Cases involving an unfit defendant who demands a discharge hearing or a defendant who cannot become fit to stand trial and for whom no special provisions or assistance can compensate for his disability and render him fit shall proceed in the following manner:

(a) At any time after a finding of unfitness to enter a plea or to stand trial, a defendant or the attorney for the defendant may move for a discharge hearing pursuant to the provisions of Section 104—25. The speedy trial provisions of Section 103—5 shall commence with the filing of a motion for a discharge hearing.

(b) If at any time the court determines that there is not a substantial probability that the defendant will become fit to stand trial or to plead within one year from the date of the original finding of unfitness, or if at the end of one year from that date the court finds the defendant still unfit and for whom no special provisions or assistance can compensate for his disabilities and render him fit, the speedy trial provisions of Section 103—5 shall commence to run * * *."

Section 103—5 (Ill. Rev. Stat. 1979, ch. 38, par. 103—5) provides for a 120-day period for those not released on bond or recognizance.

The pertinent part of section 104—25, referred to in 104—23(a), states:

"(a) As provided for in paragraph (a) of Section 104—23 and subparagraph (1) of paragraph (b) of Section 104—23 a hearing to determine the sufficiency of the evidence shall be held. Such hearing shall be conducted by the court without a jury. The State and the defendant may introduce evidence relevant to the question of defendant's guilt of the crime charged.

The court may admit hearsay or affidavit evidence on secondary matters such as testimony to establish the chain of possession of physical evidence, laboratory reports, authentication of transcripts taken by official reporters, court and business records, and public documents." Ill. Rev. Stat., 1979 Supp., ch. 38, par. 104—25(a).

The purpose of the discharge hearing provided in section 104—25 is to alleviate any unfairness in holding criminal charges against an unfit defendant without giving him the opportunity to prove his innocence. (See *People v. Lang* (1979), 76 Ill. 2d 311, 329-30, 391 N.E.2d 350, 357-58.)

Keeping this purpose in mind and construing these sections as a whole, I would find that in the absence of any delays attributable to defendant, an unfit defendant is entitled to a discharge hearing within 120 days after a motion for said hearing is made. If sections 104—23 and 104-25 were construed in any other manner, their obvious intent and purpose would not be effectuated.

I would further find that section 104—16(d) (Ill. Rev. Stat., 1979 Supp., ch. 38, par. 104—16(d)) does not conflict with the above interpretation or warrant a contrary conclusion. The pertinent sentence of 104—16(d) provides that if there is not a substantial probability that defendant will attain fitness within one year, the court should proceed as provided in section 104—23. Section 104—23(b) provides a separate procedure to be followed in such cases. However, section 104—23(a) is not restricted to cases where defendant will not attain fitness within one year. The introductory language to section 104—23 states that any unfit defendant may request a discharge hearing.

As a point of clarification, I would add that I agree with my colleagues' general assertion that delay caused by an adjudication of incompetency tolls the speedy trial statute (Ill. Rev. Stat. 1979, ch. 38, par. 103—5). However, as noted above, a discharge hearing must be timely held if a motion for the hearing is made after the adjudication of incompetency.

In the case at bar, defendant's attorney motioned for a discharge hearing on March 21, 1980, after defendant was found unfit. Thus, the time period imposed by section 104—23(a) began to run. But defendant was found fit and tried 105 days after the motion for discharge hearing was made. Thus, the rights afforded defendant under sections 104—23 and 104—25 were not substantially impaired, and the purpose of these statutes was met in substance. For this reason, I would affirm the judgment of the circuit court of Cook County.