THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
SAMMY ROBINSON, Defendant-Appellant.
First District (5th Division)   No. 1—87—0713

Opinion filed June 30, 1989.

PINCHAM, J., dissenting.

Randolph N. Stone, Public Defender, of Chicago (Vicki Rogers, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Renee Goldfarb, and Richard G. Cenar, Jr., Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MURRAY delivered the opinion of the court:

Defendant Sammy (also known as Sammie) Robinson appeals his conviction for the crime of communicating with a witness, for which he received a four-year extended prison sentence. The following facts are pertinent to this appeal.

In December 1985, defendant was arrested and charged with the aggravated sexual assault of a 14-year-old girl. He was free on bond pending trial in May 1986 when the rape victim and her mother, Mildred Stephen, were approached by Lemual Taylor. Taylor told the mother that "Sammie sent me to [offer] you a thousand dollars for [your daughter] not to come to court," after which Taylor gave Stephen a piece of paper with a telephone number on it, telling her to call Sammie. That number was later shown by competent evidence to be the number assigned to defendant's car telephone.

Stephen returned to her apartment and dialed the number. The person answering the call identified himself as Sammie and proceeded to offer Stephen $1,000 if her daughter would not go to court. After Stephen stated to Sammie that he now offers her $1,000 after burning down her mother's house, almost killing her parents, defendant raised his offer to $3,000. Meanwhile, a police officer arrived, having been summoned by a call from a family member, and picked up a telephone extension at Stephen's direction and after she had informed him that Robinson was on the phone. The officer testified that he listened to the conversation for about 30 seconds and heard defendant say that he would give Stephen $1,000 to drop the sexual assault charges pending against him.

Prior to trial on the communicating with a witness charge, the

court overruled defendant's motion to preclude mention of the sexual assault charge and any mention of arson. During the jury trial, defense counsel made various hearsay objections, which the court overruled when the State asserted that it would later prove the existence of a conspiracy. After the jury found defendant guilty of communicating with a witness, defendant filed this appeal, asserting that he was denied a fair trial by the admission of irrelevant other crimes evidence, hearsay statements should have been excluded because the State failed to prove the existence of a conspiracy, and the State's evidence did not prove the acts charged in the indictment.

There is no need to address the first two issues raised on appeal since we must reverse defendant's conviction because the State failed to prove an essential element of the crime charged.

The offense with which defendant was charged and convicted—communicating with a witness, a Class 4 felony—occurs when "[a] person who, with intent to deter any party or witness from testifying freely, fully and truthfully to any matter pending in any court ***, forcibly detains such party or witness, or communicates, directly or indirectly, to such party or witness any knowingly false information or a threat of injury or damage to the property or person of such party or witness, *** or offers or delivers money or another thing of value to such party or witness or to a relative of such party or witness." Ill. Rev. Stat. 1985, ch. 38, par. 32—4(b).

There is no evidence in this record that defendant offered money to Stephen to deter her or her daughter from testifying freely, fully and truthfully. Section 32—4(b) appears to be directed to the prevention of paying a witness to testify other than truthfully and of her own will. The offense defendant should have been charged with is compounding a crime: "A person compounds a crime when he receives or offers to another any consideration for a promise not to prosecute *or aid in the prosecution of an offender.*" (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 38, par. 32—1(a).) Compounding a crime is a petty offense.

Defendant's offer of money for the Stephens not to appear in court is in return for their nonaid in the prosecution of the sexual assault charge. Nonappearance is a refusal to aid in a prosecution rather than a refusal to testify other than freely, fully and truthfully. Furthermore, the police officer testified that defendant asked Stephen not to prosecute the case. Although the State argues that an offer of money not to appear in court can be equated to an offer of money not to testify freely, fully and truthfully, there is no supporting authority for this equation. If the Stephens had accepted defendant's offer, the

State could still have proceeded with the prosecution, subpoenaing them as witnesses whereupon they could then testify freely, fully and truthfully.

The opinion in *People v. Scribner* (1982), 108 Ill. App. 3d 1138, is illuminative of the confusion between sections 32—1 and 32—4 of the Criminal Code of 1961. (Ill. Rev. Stat. 1985, ch. 38, pars. 32—1, 32—4.) In *Scribner*, the defendant was charged with communicating with a witness after offering the complainant money to request that criminal charges be dropped against defendant's nephews. The *Scribner* court found that the evidence did not show any payment to the complainant to not testify or to testify other than freely, fully and truthfully, and that defendant was instead guilty of the petty offense of compounding a crime. In so doing, the court noted that the power to dismiss criminal charges rests with the prosecuting officer. *Scribner*, 108 Ill. App. 3d at 1143.

■ We agree with the reasoning of the *Scribner* court that our legislature probably did not intend section 32—4 to be a duplicate of section 32—1, thus making the latter superflous, and further, that criminal statutes must be construed strictly in favor of an accused and nothing is to be taken by intendment or implication against a defendant beyond the literal and obvious meaning of the statute. *Scribner*, 108 Ill. App. 3d at 1144.

■ Accordingly, we conclude that the State did not prove that defendant offered Stephen money to not testify freely, fully and truthfully, but rather offered her money not to aid in the prosecution of the sexual assault charge against him. We must therefore reverse defendant's conviction and resultant sentence.

It is to be noted that during oral argument before this court, it was revealed by the attorneys that the aggravated sexual assault charge against defendant was nol-prossed by the State and that he is now on parole from his sentence in the present case.

Reversed.

LORENZ, J., concurs.

JUSTICE PINCHAM, dissenting:
I dissent. I do not agree with the majority's conclusion that:
"[T]he State failed to prove an essential element of the crime charged.
* * *
There is no evidence in this record that defendant offered

money to Stephen to deter her or her daughter from testifying freely, fully and truthfully. ***

* * *

*** [T]he State did not prove that defendant offered Stephen money to not testify freely, fully and truthfully, but rather offered her money not to aid in the prosecution of the sexual assault charge against him." 186 Ill. App. 3d at 3, 4.

The defendant was charged with the offense of communicating with a witness (Ill. Rev. Stat. 1985, ch. 38, par. 32—4(b)), which provides in pertinent part as follows:

"A person who, *with intent to deter any party or witness from testifying freely, fully and truthfully* to any matter pending in any court *** *offers or delivers money* or another thing of value *to such party or witness* *** commits a Class 4 felony." (Emphasis added.)

The indictment alleged in pertinent part:

"Sammie Robinson committed the offense of communicating with a witness in that *he with intent to deter Mildred Stephen and her daughter Sarah Stephen from testifying freely, fully and truthfully* in a manner pending in the criminal division of the Circuit Court of Cook County, entitled People of the State of Illinois versus Sammie Robinson *offered said Mildred Stephen a sum of United States Currency* in violation of Chapter 38, Section 32—4(b) of the Illinois Revised Statutes ***." (Emphasis added.)

The cause was tried by a jury. The State's uncontradicted trial evidence established the following.

In December of 1985, the defendant Sammie Robinson was arrested for and charged with the offense of aggravated criminal sexual assault (rape) of Sarah Stephen, a 14-year-old minor. The defendant was at liberty on bond on the charge, which was set for trial for June 10, 1986.

Eighteen days before the June 10, 1986, trial date, on May 23, 1986, at about the noon hour, Mrs. Mildred Stephen, the mother of Sarah Stephen, and other family members were moving into a second-floor apartment on West 101st street in Chicago. Lemuel Taylor approached Sarah and stated to her, "Sammie sent me to talk to you." Mrs. Stephen told Lemuel Taylor that neither she nor her daughter wished to speak to Sammie and Taylor left. The police were called and a police report was made of Taylor's visit and conversation with Mrs. Stephen.

Later that afternoon Lemuel Taylor returned outside the Stephen

apartment. Taylor stated to Tina Clark, Mrs. Stephen's niece and Sarah's cousin, that he had to speak to Sarah's mother "because Sammie got some money and wants to give it to her not to come to court." Taylor further stated that if he did not speak to Sarah's mother, Sammie would not pay him for delivering the message. Mrs. Stephen was upstairs in the apartment and Tina Clark asked Tracy, a family friend, to go and tell Mrs. Stephen that Lemuel Taylor was back. Tracy related Taylor's and Sammie Robinson's messages to Mrs. Stephen, who told Tracy to call the police. Tracy did so, while Mrs. Stephen went downstairs onto the porch where she saw Taylor.

Mrs. Stephen told Taylor that she was Sarah's mother and asked him if he wanted to talk to her. Taylor answered that he did. Taylor had something in his hand and said, "Sammie sent me to give you a thousand dollars for Sherry not to come to court. *** [H]ere's a number for you to call him, he is on 104th and Wentworth in his car. Taylor handed Mrs. Stephen a piece of paper with telephone number 802-0464 written on it.

The unrebutted testimony of Charles Moran, the general auditor of Ameritech Mobile Communication, Chicago police detective Gallagher, Joliet police officer Christine Lang and a certified vehicle registration established that telephone number 802-0464 was a car phone purchased from Ameritech by defendant Sammie Robinson, whose address was listed at 5659 S. Shields, that a Cadillac with that license number had been observed parked at that address, that there was a telephone inside the Cadillac, and that six incoming calls to that telephone number were received on May 23, 1986, between 4:45 p.m. and 5:31 p.m.

When Mrs. Stephen received the paper with telephone number 802-0464 on it from Lemuel Taylor, she went upstairs to her apartment and dialed that telephone number. She related that the following conversation occurred:

"MRS. STEPHEN: Hello, could I speak to Sammie?

SAMMIE: This is Sammie.

MRS. STEPHEN: This is Sarah's mother, you wanted to talk to me?

SAMMIE: Yeah, I want to give you a thousand dollars for Sarah not to come to court.

MRS. STEPHEN: You offer me money after you burn my mother's house down and almost killed them?

SAMMIE: Well, I can give you three thousand dollars, whatever I guess to help."

Mrs. Stephen testified that Sammie further stated that he was

not worried about Sarah's case, but he did not want Sarah to come to court and help hurt the case they already had in court.

Officer Walsh entered Mrs. Stephen's apartment while she was talking on the phone to Sammie and Mrs. Stephen stated to Officer Walsh, "Robinson is on the phone, pick it up." Officer Walsh listened on a phone extension and heard a male voice say to Mrs. Stephen that he would give her $1,000 to drop the charges against him and that he would beat the case.

When Mrs. Stephen ended her telephone conversation with Sammie, she went outside, where she observed the police arrest Lemuel Taylor.

The defendant did not call any witnesses or present any evidence.

The jury found the defendant guilty of the offense of communicating with a witness, as charged. The foregoing evidence is abundantly adequate to sustain that guilty finding. The evidence is more than sufficient to establish beyond a reasonable doubt that the defendant, with the intent to deter Mrs. Stephen and her daughter Sarah from testifying freely, fully and truthfully to a matter pending in court, offered Mrs. Stephen a sum of money. Understandably, the defendant neglected to use the express language of the statute or indictment. Of course he did not expressly state to Mrs. Stephen that he offered her the money with intent to deter her and her daughter from testifying freely, fully and truthfully to a matter pending in court. Nevertheless, the foregoing evidence of Robinson's offer of $1,000 to Mrs. Stephen for her and Sarah not to come to court was sufficient and competent evidence from which the jury was authorized to and could justifiably conclude and find beyond a reasonable doubt that Robinson offered Mrs. Stephen the money with the intent to deter her and Sarah from appearing in court and that by not appearing in court, they would and could not testify freely, fully or truthfully, or at all.

Robinson's offer also may have been an offer by Robinson "for their nonaid in the prosecution of the sexual assault charge" and for them "not to aid in the prosecution of the sexual assault charge against him," as the majority concludes, but that does not preclude this offer from also being with the intent to deter the Stephens from testifying freely, fully and truthfully in court, as charged and as the jury so found by their guilty verdict. 186 Ill. App. 3d at 3, 4.

The majority's conclusion, that "[i]f the Stephens had accepted defendant's offer, the State could still have proceeded with the prosecution, subpoenaing them as witnesses whereupon they could then

testify freely, fully and truthfully," is immaterial, irrelevant and inconsequential. 186 Ill. App. 3d at 4.

Additionally, the majority's reliance on *People v. Scribner* (1982), 108 Ill. App. 3d 1138, 440 N.E.2d 160, is ill-founded. *Scribner* is not analogous to the instant case. In *Scribner*, criminal charges were pending against Kevin Crottly and Jeffrey Crottly stemming from a fight between them and John Zini. Scribner, the Crottlys' uncle offered to pay Zini $500 to go to the State's Attorney's office and request that the charges against the Crottlys be dropped. At the State's Attorney's office, Zini signed an affidavit stating that he was dropping the charges against the Crottlys and that he was not being threatened, coerced, or paid to do so. Zini signed another affidavit which stated that he was being offered $500 by Scribner to drop the charges against the Crottlys but he intended to prosecute them despite the payment. Scribner had given Zini $100 before Zini entered the State's Attorney's office and gave Zini an additional $150 when Zini left. The $250 balance was to be paid upon Jeffrey Crottly being released from custody. On these facts the jury found Scribner guilty of offering and delivering money to Zini with intent to deter from testifying freely, fully and truthfully in the Crottly prosecution.

Scribner urged on appeal for reversal that the evidence failed to prove the commission of the offense with which he was charged, *i.e.*, that he offered or delivered money to a witness with intent to deter the witness from testifying freely, fully and truthfully to any matter pending in court. Scribner contended that the evidence established his intent to cause Zini to ask the State's Attorney to drop charges. The *Scribner* court concluded:

"Our review of the evidence reveals that, without doubt, defendant's offer to pay Mr. Zini was made contingent upon Mr. Zini's agreement to ask the State's Attorney to drop charges against his nephews. *There is no evidence of any specific request by defendant that Mr. Zini refuse to testify or testify other than freely, fully and truthfully. Rather, Mr. Zini admitted on several occasions at trial that defendant never made such a request. Nowhere in the [tape-]recorded conversations between Mr. Zini and defendant does such a request appear.* *** The most the complaining witness can do is request that the State's Attorney not proceed with the prosecution. As former assistant State's Attorney Rand Hale admitted in testifying for the State, the State's Attorney was empowered to disregard Mr. Zini's request not to prosecute and to subpoena Mr. Zini to testify, though doing so would cause the State's At-

torney additional difficulty.

Based on the evidence adduced at trial, we conclude that defendant's acts evinced an intent to cause Mr. Zini not to aid in prosecution of defendant's nephews. Although such evidence establishes guilt of the petty offense of compounding a crime (Ill. Rev. Stat. 1979, ch. 38, par. 32—1), this is not an offense defendant was charged with committing and presumably was not prepared to defend. Mr. Zini could have fulfilled his part of the bargain with defendant, as revealed by both the testimony of Mr. Zini and by the tapes, by asking the State's Attorney to drop the charges; yet he still could have testified fully and truthfully at trial. ***
*** 

*** [W]e conclude that the State's evidence, if it were accepted as true, was not sufficient to establish that defendant committed the offense charged." (Emphasis added.) 108 Ill. App. 3d at 1143-44.

First, in *Scribner*, unlike in the case at bar, and as the *Scribner* court pointed out, the testimony of Zini affirmatively established, without contradiction, that the defendant Scribner never requested Zini to refuse to testify or not to testify freely, fully and truthfully.

Second, in *Scribner*, again unlike in the instant case, Scribner offered to pay Zini upon Zini's agreement to ask the State's Attorney to drop the charges against his nephews, the Crottlys, whereas, in the instant case the defendant Robinson offered the Stephens money not to come to court. Although Officer Walsh testified that the offer he overheard when listening on the telephone extension was that the man would give Mrs. Stephen $1,000 to drop the charges and that he would beat the case, Mrs. Stephen testified, however, that the defendant offered her the money for Sarah not to come to court. The jury was authorized to accept her testimony, which was not necessarily contradictory or inconsistent with Officer Walsh's testimonial version of the telephone conversation offer.

Third, in the instant case, as in *Scribner*, "there is no evidence of any *specific* request by defendant" that Mrs. Stephen or her daughter Sarah not testify freely, fully and truthfully. In the instant case, however, unlike in *Scribner*, the evidence does not affirmatively establish, as the evidence established in *Scribner*, that the defendant did not request Mrs. Stephen and Sarah to testify freely, fully and truthfully.

Fourth, concededly, the defendant in the case at bar did not expressly couch his request to Mrs. Stephen in the precise and exact

words of the statute. Rarely, if ever, is even the most sophisticated criminal so articulate. Nevertheless, the jury could validly conclude beyond a reasonable doubt that the language that the defendant *did* employ in his request and offer of money to Mrs. Stephen, and that the defendant by such language and offer intended to deter Mrs. Stephen and her daughter from testifying freely, fully and truthfully in the case in which he was charged with aggravated criminal sexual assault upon the minor daughter. *Scribner* is not analogous with, applicable to, or controlling in the case at bar.

The instant case is more closely analogous to *People v. Powell* (1978), 72 Ill. 2d 50. In *Powell*, Juanita Guevara was charged with aggravated battery arising out of a stabbing of Arvilda Torres. Officer Martinez, the investigating officer in the case, was offered $250 by Guevara's attorney, Paul Powell, if he could get the stabbing victim, Arvilda Torres to "drop the charges." After meetings and numerous conversations between Officer Martinez and attorney Powell on how to manipulate the dismissal of the battery charges, Officer Martinez appeared in court, and when Guevara's case was called, Officer Martinez falsely represented to the judge that Torres did not wish to prosecute the case, and the aggravated battery charge against Guevara was stricken on leave to reinstate. Officer Martinez and attorney Powell left the courtroom and entered attorney Powell's car parked outside the court building. Powell drove off. As they approached the corner, Powell threw $250 on the floor at Officer Martinez' feet. Officer Martinez picked the money up and handed attorney Powell a grand jury subpoena which commanded Powell's appearance before the grand jury concerning the just completed Guevara bribery. Officer Martinez got out of Powell's car. In the ensuing conversation, which gave rise to the solicitation charge against Powell, Powell repeatedly asked Officer Martinez for a "pass" and told Martinez that the officer was "blowing my whole license." Powell urged the officer to hide the money and tell the State's Attorney that he, Powell, "stiffed him" (failed to pay) and that he, Powell, would "drop anything you want any place." Powell was convicted of the Guevara bribery offense and also of the Officer Martinez solicitation offense. The appellate court reversed the bribery conviction on the grounds that the bribery had not been proven as it was charged in the indictment and that the acts Powell sought Officer Martinez to perform were not related to the performance of Officer Martinez' official duties. The appellate court also reversed Powell's solicitation conviction on the ground that the evidence was insufficient to establish that Powell's solicitation was with the requi-

site intent to obstruct the apprehension or prosecution of a specific person.

The supreme court granted the People leave to appeal in *Powell.* The supreme court pointed out that the bribery statute that Powell allegedly violated provided:

"A person commits bribery when:

(a) With intent to influence the performance of any act related to the employment or function of any public officer, public employee or juror, he promises or tenders to that person any property or personal advantage which he is not authorized by law to accept ***." (Ill. Rev. Stat. 1973, ch. 38, par. 33—1.)

The supreme court thereafter pointed out that the bribery indictment against Powell alleged:

"[W]ith the intent to influence the performance of acts related to the employment and function of a public employee, Jose Martinez, he [Powell] promised and tendered to that person property which Jose Martinez is not authorized by law to accept, to wit: Paul Powell did promise and tender a quantity of United States currency to Chicago Police Officer Jose Martinez, to influence Martinez in the securing of witnesses, and investigation and prosecution of a criminal case entitled *People v. Juanita Guevara* in the Circuit Court of Cook County." (*Powell,* 72 Ill. 2d at 6.)

In reversing the appellate court and in affirming Powell's bribery conviction, the supreme court stated, in language most analogously applicable to the facts in the instant case:

"The appellate court found that *Powell never actually told Officer Martinez not to bring a witness to court,* and that, even if he did, the bringing of witnesses to the courtroom was not related to the official duties of the officer. Officer Martinez testified, however, that his function and role as a police officer was to 'investigate crime, secure witnesses, bring enough evidence to court,' and that inquiries as to the availability of witnesses were part of his 'official duties.' But such testimony is not essential. It is common knowledge of which we take judicial notice that a principal duty of a policeman or any other law enforcement officer is the enforcement of the law. That payments made to an investigating officer in a criminal case to induce him to persuade key prosecuting witnesses not to appear or to withdraw a complaint are not intended to influence the performance of the officer's duties in investigating, identifying and securing witnesses in criminal cases is an argument

we believe does not merit further discussion. *** It seems to us clear that an important part of any investigating officer's official duties is the location and procuring of witnesses for the prosecution or for the defendant so that the result of a crime will be a fair trial and punishment for the proper person." (Emphasis added.) 72 Ill. 2d at 61-62.

Regarding Powell's conviction of solicitation to obstruct justice, the supreme court stated that, "The crime of solicitation is committed when a person, with intent that an offense be committed, commands, encourages or requests another to commit that offense. (Ill. Rev. Stat. 1973, ch. 38, par. 8—1(a).) Obstructing justice occurs when one, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, knowingly commits one of certain enumerated acts, including concealing physical evidence or furnishing false information. (Ill. Rev. Stat. 1973, ch. 38, par. 31—4(a).)" (*Powell*, 72 Ill. 2d at 63.) The solicitation count against Powell alleged:

> "Paul Powell committed the offense of solicitation in that with intent that the offense of obstructing justice be committed encouraged and requested Chicago Police Officer Jose Martinez to commit that offense, to wit: knowingly encouraged and requested Jose Martinez to conceal $250.00 in United States currency, said currency being physical evidence that the offense of bribery was committed by Paul Powell on or about October 18, 1973.
>
> In violation of Chapter 38, Section 8—1, Illinois Revised Statutes, 1973." (*Powell*, 72 Ill. 2d at 64.)

Powell argued, and the appellate court agreed, that the solicitation count was invalid because it did not allege which person's apprehension Powell sought to prevent and thus failed to inform him of the nature of the offense and prevented him from preparing his defense. The supreme court held that this contention was also without merit, and:

> "In our judgment this indictment did in fact allege the name of the particular persons—namely, Paul Powell—whose apprehension Officer Martinez would intend to prevent if he had concealed the evidence as defendant had requested. An indictment which charges an offense in the language of the statute is sufficient when the statute itself apprises the defendant with reasonable certainty of the precise offense with which he or she is charged ***. This indictment is first couched in the language of the solicitation statute, then goes on to specify the

key elements of the crime solicited; a common sense reading of it makes difficult a belief that Powell could not properly prepare his defense because the indictment was not sufficiently specific. In any event, '[t]he office of a bill of particulars is to provide more specificity of detail to supplement a sufficient indictment so as to enable an accused better to understand the nature of the charge against him or better to prepare his defense.' [Citation.] No bill of particulars was requested." 72 Ill. 2d at 64-65.

The appellate court in *Powell* also concluded that the evidence was insufficient to prove the solicitation to obstruct justice offense. The supreme court likewise held this conclusion to be without merit, stating, again, in language most analogously applicable to the instant case:

"[T]he conversation which occurred after Officer Martinez gave Powell the grand jury subpoena, clearly establishes that Powell solicited the obstruction of justice. Telling the assistant State's Attorney that Powell 'stiffed' Officer Martinez, or did not pay him the bribe money, obviously involves concealing the $250. In addition, Powell directly encouraged the officer to hide the currency, which was later introduced against Powell * * *.

* * *

The trial judge * * * found the evidence sufficient, and we find nothing in this record justifying a contrary conclusion." 72 Ill. 2d at 63-65.

In the instant case the jury found the evidence sufficient and there is nothing in this record which justifies a contrary conclusion.

The defendant Robinson finally argues in the case at bar that the "admission of irrelevant other crimes' evidence" and the admission of Lemuel Taylor's conversations with Tina Clark and Mrs. Stephen denied him a fair trial. I disagree.

Evidence of a defendant's commission of other crimes for which the defendant is not on trial ordinarily is inadmissible. (*People v. Grabbe* (1986), 148 Ill. App. 3d 678, 499 N.E.2d 499; *People v. Davis* (1984), 130 Ill. App. 3d 41, 473 N.E.2d 387; *People v. Barbour* (1982), 106 Ill. App. 3d 993, 436 N.E.2d 667; *People v. Lindgren* (1980), 79 Ill. 2d 129.) I have repeatedly expressed my views of the law's prohibition against the admission of evidence of the defendant's commission of other crimes for which the defendant is not on trial in *People v. McCarthy* (1989), 181 Ill. App. 3d 208, 214 (Pincham, J., concurring in part and dissenting in part); *People v. Howard* (1988),

14

169 Ill. App. 3d 536, 541-81, 523 N.E.2d 943 (Pincham, J., dissenting); *People v. Hayes* (1988), 168 Ill. App. 3d 816, 821-44, 522 N.E.2d 1279 (Pincham, J., dissenting); *People v. Porter* (1987), 156 Ill. App. 3d 365, 374-94, 509 N.E.2d 662 (Pincham, J., dissenting); *People v. Harris* (1986), 147 Ill. App. 3d 891, 896-909, 498 N.E.2d 621 (Pincham, J., dissenting); and *People v. Wachal* (1987), 156 Ill. App. 3d 331, 340-44, 509 N.E.2d 648 (Pincham, J., specially concurring). I do not here retreat from those views. In the instant case evidence of the defendant's commission of other crimes for which the defendant was not on trial simply was not offered or admitted. In the instant case, the evidence presented to the jury was only that the defendant was *charged* with the offense of aggravated criminal sexual assault upon Sarah Stephen. The jury was not presented one speck of evidence of the defendant's commission of that offense. The charge of aggravated criminal sexual assault upon Sarah Stephen by the defendant was an integral ingredient of the offense of communicating with a witness with which the defendant was charged and on trial. Evidence that the defendant was so charged was therefore clearly admissible. The learned trial judge, in properly overruling the defendant's *in limine* motion to exclude such evidence, aptly and correctly stated:

"[T]he charge of communicating with a witness is intricately involved with what the pending charge was. I can't see any way of properly trying the case without knowing that. However, any evidence concerning the case other than the facts of what the charge was would be irrelevant. While it is relevant that communication concerning aggravated criminal sexual assault, I believe to go into the actual facts of that case would be inappropriate. The motion *in limine* however will be denied."

Likewise, Mrs. Stephen's statement to the defendant over the telephone that "you offer me money after you burn my mother's house down and almost killed them," and the defendant's response, "Well, I can give you three thousand dollars, whatever I guess to help," were an integral part of the defendant's commission of the offense of communicating with the witness with intent to deter her and her daughter from testifying freely, fully and truthfully. The statements immediately followed and were components of the defendant's offer to Mrs. Stephen to give her a thousand dollars "for Sarah not to come to court," which offer the defendant thereby raised to $3,000. Moreover, Mrs. Stephen's statement was not evidence of the defendant's commission of the arson. It was no more than an accusa-

tion by Mrs. Stephen to the defendant that he committed the arson of her mother's home. For these foregoing reasons, this statement of Mrs. Stephen was also admissible.

The defendant's contention that Tina Clark and Mrs. Stephen's testimony of Lemuel Taylor's statements that Sammie sent him to give Mrs. Stephen $1,000 for Sarah not to come to court, that Sammie would not pay Taylor if he did not deliver the message, that Sammie was on 104th and Wentworth in his car and about Sammie's telephone number were inadmissible because no conspiracy between Taylor and defendant Robinson was shown is without merit.

When a conspiracy has been shown, admissions by a coconspirator in the course of the conspiracy are admissible against the conspirators. (*People v. Masters* (1987), 155 Ill. App. 3d 1015, 508 N.E.2d 1163, citing *People v. Goodman* (1980), 81 Ill. 2d 278, 408 N.E.2d 215.) The prosecution is required to establish a *prima facie* case by independent evidence that two or more persons were engaged in a common plan or agreement to accomplish a criminal goal or criminal end. (*People v. Olmos* (1979), 77 Ill. App. 3d 287, 395 N.E.2d 968.) The existence of the agreement need not be proved by direct evidence, but may be inferred from all the surrounding facts and circumstances, including the acts and declarations of the accused. 77 Ill. App. 3d at 291, 395 N.E.2d at 971, citing *People v. Veltese* (1978), 61 Ill. App. 3d 279, 282, 377 N.E.2d 1168.

The independent, undisputed evidence in the instant case established that Lemuel Taylor went to Mrs. Stephen's apartment twice. During Taylor's second visit he gave Mrs. Stephen a piece of paper. On the piece of paper was written defendant's telephone number. Mrs. Stephen called the phone number given to her by Taylor and spoke with defendant. During the phone conversation, defendant offered her $1,000 and later $3,000 in exchange for her daughter Sarah not to go to court. It is abundantly clear by Taylor's actions and defendant's words that they had entered into an agreement. There was overwhelming unrebutted direct and circumstantial evidence which established an agreement between Taylor and the defendant to accomplish a criminal act.

The defendant's trial was without reversible error. Accordingly, I would affirm his conviction. I therefore dissent.