THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS JACKSON, JR., a/k/a Thomas Junior Jackson, Defendant-Appellant.

Fourth District   No. 4—91—0519

Opinion filed June 30, 1992.

Daniel D. Yuhas and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Craig H. DeArmond, State's Attorney, of Danville (Norbert J. Goetten, Robert J. Biderman, and Elliott Turpin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

Defendant, Thomas J. Jackson, was charged by information in Vermilion County case No. 90—CF—155 with one count of unlawful communication with a witness and one count of bribery. (Ill. Rev. Stat. 1989, ch. 38, pars. 32—4(b), 33—1(a).) The trial court granted a directed verdict on the charge of communicating with a witness, based on *People v. Robinson* (1989), 186 Ill. App. 3d 1, 541 N.E.2d 1336. *Robinson* held that communicating with a witness requires an intent to deter a witness from testifying truthfully, and a request that the witness simply not appear at trial did not involve the necessary intent. *Robinson* suggested the proper charge would have been compounding a crime (Ill. Rev. Stat. 1989, ch. 38, par. 32—1(a)), which prohibits offering consideration for a promise not to

"aid in the prosecution of an offender." The trial court here ruled that *Robinson* did not apply to the bribery charge, and the jury found defendant guilty of bribery, a Class 2 felony (Ill. Rev. Stat. 1989, ch. 38, par. 33—1(f)). Defendant was sentenced to three years of imprisonment. Defendant appeals on the basis that the State failed to prove all the elements of bribery beyond a reasonable doubt. We affirm.

Eric Johnston was scheduled to appear at 9 a.m. on May 8, 1990, as complaining witness in a case where he was alleged to have been the victim of an attack by defendant's wife, Diane Jackson. After Johnston was informed that the case was continued until 1:30 p.m., he went to the National Liquors store where he was employed to speak with his boss, Jeff Scott, and to use the phone. While Johnston was in the store, defendant and a companion entered and approached him. Scott and several customers were nearby. Johnston claims defendant began talking about Diane Jackson's case and the fact that Johnston was going to be a witness against her. Defendant asked Johnston to drop the charges against Diane Jackson because defendant wanted to get the $300 back he had surrendered for her release on bond. Defendant stated that the only way for him to get the $300 back was if Johnston would drop the charges against her. Defendant then told Johnston he would give Johnston $25 in return for Johnston dropping the charges against Diane Jackson. Johnston simply shook his head and made no response. Defendant repeated this offer to Johnston two or three times until someone in the store told defendant he should keep quiet. After defendant left Johnston reported the incident to the police.

Scott indicated that he was standing close to Johnston and defendant, and he overheard their conversation. Scott's testimony corroborated Johnston's, that defendant offered Johnston $25 to drop the charges against Diane Jackson.

At trial defendant related a different version. According to defendant, he and Johnston talked about the football game on television and about the fact Johnston thought defendant had been responsible for puncturing a tire on Johnston's car. After defendant denied puncturing Johnston's tire, Johnston told defendant he did not believe defendant and he wanted defendant to get out of the store. Both defendant and Diane Jackson had previously been barred from the store; defendant claimed that Johnston did not like him. Defendant denied offering $25 to Johnston to get Johnston to drop the charges against Diane Jackson, and claimed that he and

Johnston did not discuss the case on May 8. Defendant testified that he and his brother-in-law had shared two bottles of Wild Irish Rose and two quarts of beer before his conversation with Johnston. According to defendant, he and Johnston had on several occasions discussed the case against defendant's wife, and Johnston had told him that Johnston did not want Diane Jackson to go to jail.

■■ Section 33—1(a) of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 33—1(a)) provides that a person commits the Class 2 felony of bribery when:

> "(a) With intent to influence the performance of any act related to the employment or function of any public officer, public employee, juror or witness, he promises or tenders to that person any property or personal advantage which he is not authorized by law to accept."

In 1977 the bribery statute was amended to add the language that influencing a "witness" is bribery. (Pub. Act 80—922 §1, eff. October 1, 1977 (1977 Ill. Laws 2673).) In 1978 the legislature increased the degree of the offense of bribery from a Class 3 felony to a Class 2 felony. (Pub. Act 80—1099 §1, eff. February 1, 1978 (1977 Ill. Laws 3264).) The statutory scheme which emerged was one whereunder bribery specifically included influencing a witness, while communicating with a witness and compounding a crime (Ill. Rev. Stat. 1989, ch. 38, par. 32—1(a)) remained separate, distinct, and less serious offenses.

At issue is whether the offer by defendant to pay $25 to Johnston, if Johnston dropped the charges against Diane Jackson, is "intent to influence the performance" of a witness as required for a conviction of bribery. (Ill. Rev. Stat. 1989, ch. 38, par. 33—1(a).) Of course Johnston did not have the power to "drop" the charges against Diane Jackson. Only the State's Attorney had the power to do that. In *People v. Scribner* (1982), 108 Ill. App. 3d 1138, 440 N.E.2d 160, defendant offered to pay a complaining witness if he would go to the State's Attorney's office to request that charges be dropped. The court held defendant could not on those facts be convicted of communicating with a witness, which required an attempt to prevent a witness from "testifying freely, fully and truthfully" (see Ill. Rev. Stat. 1979, ch. 38, par. 32—4(b)), but defendant could have been convicted of compounding a crime, which involved payment "for a promise not to prosecute or aid in the prosecution" (see Ill. Rev. Stat. 1979, ch. 38, par. 32—1(a)). In contrast, in *People v. Powell* (1978), 72 Ill. 2d 50, 55, 377 N.E.2d 803, 805, defendant offered a policeman money if he could get the complaining wit-

ness to " 'drop the charges.' " The supreme court upheld a conviction for bribery, stating that the idea that payment to a police officer to persuade a witness to withdraw a complaint was not intended to influence the performance of the officer's duties (investigating crimes and identifying and securing witnesses) "does not merit further discussion." (*Powell*, 72 Ill. 2d at 62, 377 N.E.2d at 807.) *Powell* went on to quote from *People v. Clemons* (1962), 26 Ill. 2d 481, 483, 187 N.E.2d 260, 261:

> " 'The essence of the crime of bribery is the giving to, and receiving or acceptance by, a public officer of something of value to influence him in the performance of his official duty, whether [the duty] be termed general or specific.' " *Powell*, 72 Ill. 2d at 62, 377 N.E.2d at 808.

In the case at bar Johnston was not a policeman, but a complaining witness, and defendant argues the payment was not to influence his performance as a witness; rather, the payment was designed to get him to do something apart from his duties as a witness—to speak to the State's Attorney. The harm comes when defendant promises some payment which the witness has no right to accept. It is not clear how defendant expected Johnston to go about dropping the charges, which distinguishes this case from *Scribner* on its facts, but in our view the jury could reasonably have found that defendant intended to influence the performance of an act related to the function of a witness when he offered Johnston money to "drop the charges" against Diane Jackson.

■ Defendant argues that offering money to the complaining witness to drop the charges constitutes the petty offense of compounding a crime. (*Scribner*, 108 Ill. App. 3d at 1143, 440 N.E.2d at 164; *Robinson*, 186 Ill. App. 3d at 3, 541 N.E.2d at 1338.) It is irrelevant that defendant could have been charged with the offense of compounding a crime based on the decisions in *Robinson* and *Scribner*. In *Scribner* and *Robinson* it was held that the legislature did not intend for communicating with a witness to duplicate the offense of compounding a crime, thereby making the latter offense superfluous. In the present case it is clear the legislature intended for the bribery statute to include bribery of witnesses, even though the same conduct may be punishable as compounding a crime or communicating with a witness. That legislative intent is clear from the legislature's amendment of the bribery statute in 1977 to include bribing of a "witness" within the offense.

■ Whether to prosecute and what charges to file are decisions that generally rest in the prosecutor's discretion. (*United States v.*

*Batchelder* (1979), 442 U.S. 114, 124, 60 L. Ed. 2d 755, 765, 99 S. Ct. 2198, 2204.) The presumption is that any prosecution for violation of the criminal law is undertaken in good faith. (*People v. Brandstetter* (1982), 103 Ill. App. 3d 259, 270, 430 N.E.2d 731, 739-40.) While the prosecutor may be influenced by the penalties available upon conviction, this fact standing alone does not give rise to an equal protection or due process violation. (*Batchelder*, 442 U.S. at 125, 60 L. Ed. 2d at 765, 99 S. Ct. at 2205.) In the case at bar, defendant has not presented any evidence tending to show an equal protection violation other than some overlap between the bribery, compounding a crime, and communicating with a witness statutes. Such evidence does not establish an equal protection violation. See generally *Batchelder*, 442 U.S. 114, 60 L. Ed. 2d 755, 99 S. Ct. 2198.

■ Defendant also argues that the evidence did not show that he was guilty of bribery beyond a reasonable doubt. The relevant question is whether, if after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789; *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277.) It is not our function to reweigh the credibility of witnesses, and accordingly, we will not disturb the jury's determination that the State's witnesses were to be believed in the circumstances of this case. (*People v. Novotny* (1968), 41 Ill. 2d 401, 411-12, 244 N.E.2d 182, 188.) The evidence which the jury found most credible showed that Johnston was a witness and that defendant promised money to Johnston if Johnston would drop the charges against Diane Jackson. We find that the State sufficiently proved all the elements of bribery.

Affirmed.

McCULLOUGH and LUND, JJ., concur.