# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Stuckey*, 2011 IL App (1st) 092535

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LASHON STUCKEY, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-09-2535 |
| Filed | September 30, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The evidence presented by the State was sufficient to prove beyond a reasonable doubt that defendant was guilty of communicating with a witness, and the trial court's error in failing to comply with the requirements of Supreme Court Rule 431(b) was not reversible error under the first prong of the plain-error doctrine; however, the cause was remanded for correction of the fines and fees order to reflect the vacation of certain assessments and the application of the presentence incarceration credit to certain fines. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 06-CR-11987; the Hon. Matthew E. Coghlan, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part; cause remanded. |

Counsel on
Appeal

Michael J. Pelletier, Alan D. Goldberg, and Bryon M. Reina, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Kathleen Warnick, and Emma Nowacki, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE CONNORS delivered the judgment of the court, with opinion.
Justices Cunningham and Harris concurred in the judgment and opinion.

## OPINION

¶ 1      Defendant Lashon Stuckey appeals from his conviction by a jury for communication with a witness in violation of section 32-4(b) of the Criminal Code of 1961 (720 ILCS 5/32-4(b) (West 2006)). Defendant argues that (1) the State's evidence was insufficient to prove him guilty of the crime beyond a reasonable doubt, (2) the trial court failed to properly admonish potential jurors pursuant to Illinois Supreme Court Rule 431(b) (eff. May 1, 2007), and (3) the trial court improperly imposed certain fines and fees during sentencing. We affirm defendant's conviction and sentence, but we vacate in part the fines and remand for correction of the fines and fees order.

¶ 2                      I. BACKGROUND

¶ 3      In 2002, Latonia Jones witnessed a murder and identified Derrick Rogers as the killer. Defendant was an acquaintance of Rogers, and in April 2006, defendant approached Jones' mother Della Thomas about Jones' upcoming appearance as a witness in Rogers' murder trial. As Della later testified, defendant told Della that Rogers planned to give Jones $1,000 if she failed to appear in court and testify against Rogers. Whether defendant himself was initially part of this proposed transaction is somewhat unclear from Della's testimony, but she stated that "[defendant] said they were offering–[Rogers] would offer [Jones] a stack to not to [sic] testify, not to come to court to testify," and also that "[i]f she testified, something might happen to her, something would happen to her." At this point, Della appears to have taken defendant's statement as something of a warning as to Rogers' plans, rather than an explicit threat by defendant against Jones.

¶ 4      However, Della told Jones' sister Shauntae Thomas about the conversation with defendant, and when defendant approached Shauntae the next day he stated his intentions more explicitly. Shauntae testified that defendant told her, " '[Rogers] said if [Jones] don't come to court, they would give her a thousand dollars *** a thousand dollars to not come to court to testify, but if she do come to court to testify, something is going to happen to her."

¶ 5     Both Della and Shauntae related these conversations to Jones, but it was not long before defendant approached Jones herself. As Jones later testified, defendant asked her to "do [him] a favor," and defendant again reiterated that if Jones came to court "something bad" would happen to her. However, if Jones failed to appear she would "get paid dough."

¶ 6     Defendant was later arrested and charged with communicating with a witness in violation of section 32-4(b) of the Criminal Code of 1961 (720 ILCS 5/32-4(b) (West 2008)). During jury selection, the trial court admonished the venire about the principles set forth in Illinois Supreme Court Rule 431(b) (eff. May 1, 2007). Although the trial court asked the venire if they accepted and understood three of the four principles and allowed the potential jurors an opportunity to indicate that they did not, the trial court did not inquire whether they understood and accepted the principle that a defendant's decision not to testify cannot be held against him. See Ill. S. Ct. R. 431(b) (eff. May 1, 2007).

¶ 7     The jury ultimately convicted defendant of communicating with a witness, and following posttrial motions, the trial court sentenced defendant to eight years' incarceration. As part of the sentence, the trial court imposed several fines and fees. After defendant's motion to reconsider the sentence was denied, defendant filed a timely notice of appeal. This case is now before us.

¶ 8                                II. ANALYSIS

¶ 9     Defendant raises three issues on appeal that we will consider in turn: (1) whether the State's evidence was sufficient to prove defendant guilty beyond a reasonable doubt; (2) whether the trial court properly admonished potential jurors pursuant to Illinois Supreme Court Rule 431(b) (eff. May 1, 2007); and (3) whether the trial court properly imposed certain fines and fees during sentencing.

¶ 10                        A. Sufficiency of the Evidence

¶ 11    Defendant's primary argument on appeal is that the State failed to present sufficient evidence to prove him guilty beyond a reasonable doubt. When reviewing a challenge to the sufficiency of the evidence, "the relevant question is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in orginal.) *People v. Jackson*, 232 Ill. 2d 246, 280 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). We will not reverse a conviction "unless the evidence is 'unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt.' " *Id.* at 281 (quoting *People v. Campbell*, 146 Ill. 2d 363, 375 (1992)).

¶ 12    The issue in this case is whether the State proved the *mens rea* element of the crime of communicating with a witness. At trial, the State presented three different witnesses who each testified, in essence, that defendant offered Jones $1,000 in exchange for her not testifying as a witness in Rogers' trial and threatened her with "something bad" if she did testify. The offense of communicating with a witness is defined as follows:

        "A person who, with intent to deter any party or witness from testifying freely, fully

and truthfully to any matter pending in any court, or before a Grand Jury, Administrative agency or any other State or local governmental unit, forcibly detains such party or witness, or communicates, directly or indirectly, to such party or witness any knowingly false information or a threat of injury or damage to the property or person of any individual or offers or delivers or threatens to withhold money or another thing of value to any individual commits a Class 3 felony." 720 ILCS 5/32-4(b) (West 2008).

Accordingly, in order to prove the *mens rea* element, the State must demonstrate that defendant had the "intent to deter any party or witness from testifying freely, fully and truthfully."

¶ 13    Defendant's position on appeal is that, at most, the evidence at trial showed that his intent was to deter Jones from showing up in court in order to testify. Defendant argues that the statute only applies to situations in which a defendant intends to coerce witnesses into altering their testimony or testifying falsely. In support, defendant relies exclusively on the decision of this court in *People v. Robinson*, 186 Ill. App. 3d 1 (1989), which construed the *mens rea* element of this crime. In *Robinson*, the defendant was convicted of communicating with a witness after he offered to pay money to an alleged sexual assault victim and her mother in exchange for not appearing in court in order to testify against him. See *id.* at 2. The appellate court reversed the defendant's conviction, finding that the State had failed to prove the *mens rea* element. See *id.* at 3. The court examined the elements of the crime and held that the defendant should have been charged instead with compounding a crime, which is a different offense. See *id.* at 4 (citing *People v. Scribner*, 108 Ill. App. 3d 1138 (1982)); see also 720 ILCS 5/32-1 (West 2008) (defining the offense of compounding a crime). Compounding a crime is defined as "receiv[ing] or offer[ing] to another any consideration for a promise not to prosecute *or aid in the prosection of an offender*." (Internal quotation marks omitted.) (Emphasis in original.) *Id.* at 3 (quoting Ill. Rev. Stat. 1985, ch. 38, ¶ 32-1(a)). The court reasoned as follows, which we reproduce at length for context:

"Defendant's offer of money for the Stephens [*i.e.*, the victim and her mother] not to appear in court is in return for their nonaid in the prosecution of the sexual assault charge. Nonappearance is a refusal to aid in a prosecution rather than a refusal to testify other than freely, fully and truthfully. Furthermore, the police officer testified that defendant asked Stephen not to prosecute the case. Although the State argues that an offer of money not to appear in court can be equated to an offer of money not to testify freely, fully and truthfully, there is no supporting authority for this equation. If the Stephens had accepted defendant's offer, the State could still have proceeded with the prosecution, subpoenaing them as witnesses whereupon they could then testify freely, fully and truthfully.

*** 

We agree with the reasoning of the *Scribner* court that our legislature probably did not intend section 32-4 to be a duplicate of section 32-1, thus making the latter superflous, and further, that criminal statutes must be construed strictly in favor of an accused and nothing is to be taken by intendment or implication against a

defendant beyond the literal and obvious meaning of the statute. [Citation.]

Accordingly, we conclude that the State did not prove that defendant offered Stephen money to not testify freely, fully and truthfully, but rather offered her money not to aid in the prosecution of the sexual assault charge against him." *Id.* at 3-4.

One justice dissented, arguing that *Scribner* was inapplicable to this situation based on the facts of that case. See *id.* at 4-15 (Pincham, J., dissenting). In particular, the dissent pointed out that in *Scribner* the evidence demonstrated only that the defendant had paid the complaining witness in order to have charges dropped, and it did not establish that the defendant had ever asked the complaining witness not to testify in court or to testify other than freely, fully, and truthfully. See *id.* at 9 (Pincham, J., dissenting).

¶ 14    *Robinson* is directly on point and we must address it, but to do so we must examine both the communicating-with-a-witness statute (720 ILCS 5/32-4(b) (West 2008)) and the compounding-a-crime statute (720 ILCS 5/32-1 (West 2008)). The majority in *Robinson* interpreted the *mens rea* element of the communicating-with-a-witness statute as excluding the intent to induce a witness to fail to appear in court largely because the court believed that to do otherwise would render that statute a mere duplicate of the compounding-a-crime statute. See *Robinson*, 186 Ill. App. 3d at 4.

¶ 15    However, when all of the elements of the two statutes are examined in their entirety, it is evident that the statutes are not redundant. In addition to the *mens rea* element, communicating with a witness has three possible *actus reus* elements, only one of which must be proven in order to establish the crime. The State must prove that a defendant either (1) forcibly detained the witness; (2) communicated to the witness "knowingly false information or a threat of injury or damage to the property or person"; or (3) "offer[ed] or deliver[ed] or threaten[ed] to withhold money or another thing of value." 720 ILCS 5/32-4(b) (West 2008). In contrast, the compounding-a-crime statute only contains a single *actus reus* element: "receiv[ing] or offer[ing] to another any consideration for a promise not to prosecute or aid in the prosecution of an offender." 720 ILCS 5/32-1(a) (West 2008)).

¶ 16    The problem with *Robinson*'s construction of the communicating-with-a-witness statute is that it focuses solely on the third potential *actus reus* element in construing the *mens rea* element. It does not consider how its interpretation of the *mens rea* element would apply to the other two alternative *actus reus* elements. This is likely due to the fact that the third communicating-with-a -witness element and the sole element of compounding a crime both deal with paying money to witnesses. However, when *Robinson*'s interpretation of the *mens rea* element is applied to the other *actus reus* elements, inconsistencies immediately appear.

¶ 17    Assume that, as *Robinson* held, a defendant cannot be convicted of communicating with a witness if his intent is solely to induce a witness not to appear in court in order to testify against him. If, as in *Robinson*, a defendant offers a witness money in exchange for not testifying, then he may simply be charged and convicted of compounding a crime. Yet what about a defendant who kidnaps complaining or material witnesses and detains them until the trial is over? Detention is explicitly contemplated by section 32-4(b), yet under *Robinson*'s interpretation of the *mens rea* element, that defendant cannot be convicted of communicating with a witness. However, neither can he be convicted of compounding a crime under section

32-1(a) because that section has only a single possible *actus reus* element that cannot be satisfied by detention of a witness. Similarly, a defendant who threatens to kill witnesses in order to keep them from appearing in court could not be convicted under either statute, one for lack of *mens rea* and the other for lack of *actus reus*. Although there are a number of other offenses enumerated in the Criminal Code of 1961 that punish interference with judicial procedure (see generally 720 ILCS 5/art. 32 (West 2008)), not one of them would cover this type of criminal behavior if we were to accept *Robinson*'s construction of the offense of communicating with a witness.

¶ 18    Although *Robinson*'s interpretation of the *mens rea* element makes sense in the limited context of a defendant who pays witnesses not to testify, such an interpretation is not reasonable when it is applied to the rest of section 32-4(b). Given that we must "presume [that] the legislature did not intend absurd results" (*People v. McCarty*, 223 Ill. 2d 109, 126 (2006)), we cannot accept an interpretation of section 32-4(b) that would create such an obvious loophole and allow acts such as detaining and threatening witnesses that are explicitly contemplated by the statute to go unpunished. We accordingly cannot accept *Robinson*'s construction of the *mens rea* element of communicating with a witness and we must respectfully decline to follow that precedent.

¶ 19    Having declined to follow *Robinson*, the question remains whether the intent to deter a witness from appearing in court in order to testify satisfies the *mens rea* element of section 32-4(b). Statutory interpretation is an issue of law that we review *de novo*, and the canons of statutory construction are well known. See *McCarty*, 223 Ill. 2d at 124. As the supreme court has summarized:

> "The fundamental rule of statutory interpretation is to give effect to the intent of the legislature. [Citation.] Accordingly, a court must consider a statute in its entirety, keeping in mind the subject it addresses and the legislature's apparent objective in enacting it. [Citation.] The best indication of the legislature's intent is the language of the statute, given its plain and ordinary meaning. [Citation.] Where the language is clear and unambiguous, it will be given effect without resorting to further aids of construction. [Citation.]" Id.

¶ 20    Given that section 32-4 does not define any of its terms, we resort to the dictionary for their ordinary and popular meaning. See *People v. Cardamone*, 232 Ill. 2d 504, 513 (2009). The key *mens rea* phrase in section 32-4(b) is "intent to *deter* any party or witness from testifying freely, fully and truthfully." (Emphasis added.) 720 ILCS 5/32-4(b) (West 2008). The verb "deter" is ordinarily understood to mean "to turn aside, discourage, or prevent from acting by fear or consideration of dangerous, unpleasant attendant circumstances or consequences." Webster's Third New International Dictionary 616 (1981).

¶ 21    Applying this definition to section 32-4(b), it is apparent that the statute encompasses not only the intent to discourage a witness from testifying freely, fully, and truthfully, but also the intent to *prevent* the witness from testifying at all. The term "prevent" carries with it the implication of making something physically impossible, rather than merely changing the way in which it occurs. See *id.* at 1798 (defining "prevent" as "to keep from happening or existing esp. by precautionary measures : *** make impossible through advance provisions"). Under

these definitions, the plain language of the statute encompasses a mental state that is focused on the objective of making free, full, and truthful testimony against a defendant impossible. One method of preventing such testimony is by ensuring that the witness does not appear in court in order to give it, although this method is by no means the exclusive one for achieving such an objective. Accordingly, the *mens rea* for communicating with a witness includes the intent to prevent a witness from appearing in court in order to testify.

¶ 22    This reading of the statute is reinforced when we consider section 32-4(b) alongside section 32-4(a), which defines the crime of communicating with a juror. The *mens rea* for this offense is parallel but not quite identical to that of communicating with a witness and, rather than referring to "intent to deter" (720 ILCS 5/32-4(b) (West 2008)), communicating with a juror requires an "intent to influence" (720 ILCS 5/32-4(a) (West 2008)). The ordinary meaning of "influence" is "to affect or *alter the conduct*, thought, or character of by indirect or intangible means." (Emphasis added.) Webster's Third New International Dictionary 1160 (1981). This definition is remarkably close to the *mens rea* requirement that *Robinson* read into section 32-4(b). See *Robinson*, 186 Ill. App. 3d at 3 ("Section 32-4(b) appears to be directed to the prevention of paying a witness to testify *other than* truthfully and of her own free will." (Emphasis added.)).

¶ 23    However, the legislature used two different words when defining the respective *mens rea* elements of communicating with a juror and communicating with a witness, and we cannot presume that the difference was anything other than intentional. See *McCarty*, 223 Ill. 2d at 124. Accordingly, section 32-4(b) cannot mean, as *Robinson* held, that the *mens rea* of communicating with a witness is satisfied *only* by the intent for witnesses to alter their intended testimony but to still appear in court. Such an interpretation would render the difference between the two words meaningless, and we cannot presume that the legislature intended for these terms to be mere surplusage. See *People v. Frieberg*, 147 Ill. 2d 326, 349 (1992) ("Another rule of statutory construction *** is that the presence of surplusage will not be presumed."); *cf. id.* ("[B]ecause the legislature used both 'purpose' and 'intent,' with different modifying language, it appears that a distinction was intended between the two elements.").

¶ 24    In light of the above analysis, we hold that the *mens rea* of communicating with a witness includes, at the very least, the intent to deter a witness from appearing in court in order to testify. We caution, however, that our holding is in no way intended to limit the *mens rea* to only that specific mental state. Whether the *mens rea* of section 32-4(b) may be satisfied by evidence of some other intent is a question that we do not reach because it is not presented by the facts of this case, and we express no opinion on the subject.

¶ 25    All that now remains is to apply these principles to the evidence that was presented at trial. Shauntae, Della, and Jones all testified that defendant approached them and offered Jones $1,000 if she did not come to court in order to testify against Rogers, or else "something" would happen. Even if we were to assume, as defendant argues, that Della's testimony was inconsistent with that of Shauntae and Jones on the issue of defendant's intent, resolving conflicting testimony is a function of the jury. See *Jackson*, 232 Ill. 2d at 281. The evidence that was presented at trial, if believed by a rational juror, established that defendant not only offered money to Jones but also threatened her, and that he did so with

the intent that the offer and accompanying threat would dissuade her from appearing in court in order to testify. This evidence is sufficient for a rational juror to find defendant guilty of communicating with a witness in violation of section 32-4(b), and we accordingly affirm the jury's verdict.

¶ 26                                        B. *Voir Dire*

¶ 27     Defendant next argues that the trial court erred by failing to properly admonish potential jurors pursuant to Illinois Supreme Court Rule 431(b) (eff. May 1, 2007). This issue is controlled by the supreme court's recent decision in *People v. Thompson*, 238 Ill. 2d 598 (2010).

¶ 28     Defendant concedes that he failed to properly preserve this issue for review by objecting during *voir dire* and including the issue in his posttrial motion. The issue is consequently forfeit and may only be reviewed under the plain-error doctrine. See *id.* at 611 (citing *People v. Enoch*, 122 Ill. 2d 176, 186 (1988)). In order to obtain reversal and a new trial, defendant bears the burden of persuasion. See *id.* at 613. The first step of plain-error analysis is determining whether an error occurred. See *id.* The only question in determining error in this case is whether the trial court strictly complied with Rule 431(b) when questioning the jurors. The supreme court described the correct analysis as follows in *Thompson*:

> "The language of Rule 431(b) is clear and unambiguous. The rule states that the trial court 'shall ask' potential jurors whether they understand and accept the enumerated principles. While the prospective jurors may be questioned individually or in a group, the method of inquiry must 'provide each juror an opportunity to respond to specific questions concerning the [Rule 431(b)] principles.' The committee comments emphasize that trial courts may not simply give 'a broad statement of the applicable law followed by a general question concerning the juror's willingness to follow the law.' [Citation.]
>
> Rule 431(b), therefore, mandates a specific question and response process. The trial court must ask each potential juror whether he or she understands and accepts each of the principles in the rule. The questioning may be performed either individually or in a group, but the rule requires an opportunity for a response from each prospective juror on their understanding and acceptance of those principles." *Id.* at 607.

¶ 29     It is undisputed in this case, and the State concedes, that the trial court neglected to ask the jurors whether they understood and accepted the fourth principle, that is, that defendant need not testify and that his decision not to cannot be held against him. The result of this omission is straightforward: the trial court failed to comply with Rule 431(b)'s clear requirements, and that is error under *Thompson*. *Cf. id.* ("Most notably, the trial court did not question any of the prospective jurors on the third principle, whether they understood and accepted that defendant was not required to produce any evidence on his own behalf. Rule 431(b) requires trial courts to address each of the enumerated principles. The failure to address the third principle, by itself, constitutes noncompliance with the rule.").

¶ 30     Having found that the trial court erred, the remaining question is whether the error is

reversible. An error is reversible under the plain-error doctrine only where "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 31    The supreme court in *Thompson* found that a Rule 431(b) error of this kind is reversible under the second prong of the doctrine only where a defendant can demonstrate that the error resulted in impaneling a biased jury. See *Thompson*, 238 Ill. 2d at 613. Defendant concedes that he cannot carry his burden under the second prong, and so he instead seeks reversal under the first prong of the doctrine. However, we are not persuaded that the evidence was closely balanced. There was ample evidence presented at defendant's trial from which a jury could find that defendant communicated with a witness. Specifically, three witnesses testified that defendant offered Jones money in exchange for not testifying against Rogers, and this testimony was unrebutted and unimpeached. Moreover, even if we were to assume that the evidence was closely balanced, defendant has not demonstrated how the trial court's Rule 431(b) error could have tipped the scales against him and resulted in his conviction. Defendant only offers the speculative theory that "it could have been defendant's trial strategy [of not testifying] that tipped the jury against him." Defendant offers no evidence from the record in support of this conjecture other than the mere fact of the error and, without more, he cannot carry his burden of persuasion. Because defendant has not met his burden, the first prong of the plain-error doctrine cannot excuse his forfeiture of this issue. *Cf. id.* at 615.

¶ 32                              C. Fines and Fees

¶ 33    The final issue that defendant raises is whether the trial court properly imposed several fines and fees, which total $570. The State concedes that imposition of a $5 court system assessment, a $5 drug court assessment, and a $30 Children's Advocacy Center assessment were improper. See 55 ILCS 5/5-1101(a) (West 2008); 5-1101(f-5) (West 2006). The State also concedes that defendant is entitled to a $5-per-day presentence incarceration credit for a $10 mental health fine (55 ILCS 5/5-1101(d-5) (West 2008)), and a $5 youth division/peer court fine (55 ILCS 5/5-1101(e) (West 2008)). However, the parties disagree about two remaining assessments: a $10 assessment under section 17 of the County Jail Act (730 ILCS 125/17 (West 2008)), and a $200 DNA analysis assessment under section 5-4-3(j) of the Unified Code of Corrections (730 ILCS 5/5-4-3(j) (West 2008)).

¶ 34    Defendant argues that he should not have been assessed the $10 assessment under section 17 of the County Jail Act (730 ILCS 125/17 (West 2008)) because he did not receive any medical treatment while he was detained pending trial. This issue is controlled by the supreme court's decision in *People v. Jackson*, 2011 IL 110615. On facts identical to this case, the supreme court held that the preamended version of section 17 (the version that defendant argues applies to him) imposes a mandatory fee on all convicted defendants. See *id.* ¶ 24. In light of *Jackson*, the trial court properly assessed the $10 fine.

¶ 35    Turning to the $200 assessment under section 5-4-3(j) of the Unified Code of Corrections (730 ILCS 5/5-4-3(j) (West 2008)), defendant argues that this assessment is a fine that is subject to a presentence incarceration setoff, relying on *People v. Long*, 398 Ill. App. 3d 1028, 1031 (2010). The State asserts that the assessment is a fee and argues that *Long* was wrongly decided. In *Long*, this court applied the supreme court's analysis in *People v. Jones*, 223 Ill. 2d 569 (2006), to section 5-4-3(j) and held that the assessment is a fine, which qualifies for the setoff under section 110-14(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-14(a) (West 2008)). See *Long*, 398 Ill. App. 3d at 1031-34.

¶ 36    Although the *Jones* analysis in *Long* is persuasive, we do not think that *Long* survives the supreme court's recent decision in *People v. Marshall*, 242 Ill. 2d 285 (2011). In *Marshall*, the supreme court held that the DNA analysis charge under section 5-4-3(j) is authorized "only where that defendant is not currently registered in the DNA database." *Id.* at 303. The most important consideration in a *Jones* fine-or-fee analysis is that "a 'fine' is part of the punishment for a conviction, whereas a 'fee' or a 'cost' seeks to recoup expenses incurred by the State–to 'compensat[e]' the state for some expenditure incurred in prosecuting the defendant." *Jones*, 223 Ill. 2d at 582; accord *People v. Graves*, 235 Ill. 2d 244, 250-51 (2009). Given that *Marshall* found that section 5-4-3(j) allows the assessment of the charge only when the State actually incurs a cost in registering a defendant in the DNA database, it follows that the charge is a compensatory fee rather than a punitive fine. Although *Marshall* did not explicitly decide whether the DNA charge is in fact a fine or a fee, in light of *Marshall* we must decline to follow *Long*. Instead, we find that the charge is a fee, and it is therefore not subject to the presentence incarceration credit. *Cf. People v. Anthony*, 408 Ill. App. 3d 799, 809 (2011) (pre-*Marshall* case, but reaches the same conclusion).

¶ 37                                   III. CONCLUSION

¶ 38    As explained above, we affirm defendant's conviction and sentence of incarceration. However, we vacate the $5 court system assessment (55 ILCS 5/5-1101(a) (West 2008)), the $5 drug court assessment (55 ILCS 5/5-1101(f) (West 2006)), and the $30 Children's Advocacy Center assessment (55 ILCS 5/5-1101(f-5) (West 2006)). We apply defendant's presentence incarceration credit to the $10 mental health fine (55 ILCS 5/5-1101(d-5) (West 2008)), and the $5 youth division/peer court fine (55 ILCS 5/5-1101(e) (West 2008)). Finally, we observe that defendant has not argued in his brief on appeal that the $10 fine under section 17 of the County Jail Act (730 ILCS 125/17 (West 2008)) is also subject to the presentence incarceration credit, so we consider that specific issue to be forfeit and take no action on that fine other than affirming its assessment by the trial court. See Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008). This cause is remanded to the trial court for recalculation of defendant's fines and corresponding correction of the fines and fees order.

¶ 39    Affirmed in part and vacated in part; cause remanded.